Judge Ewing
delivered the Opinion of the Court.
Simon R. Baker, administrator of William Baker, irt 1817, obtained a decree against James Dobyns, for eight hundred and fifty-one dollars and twenty-six cents, and. costs, on account of money paid by said William Baker, to the Commonwealth of Kentucky, as one of the sure-, ties of said Dobyns as former sheriff, in his bond executed in 1799, for the collection of the revenue. And hav-: ing failed to collect the amount, by execution—in 1831, he filed his bill against said James Dobyns and his children and others, alleging, that said James had purchased a tract of land from Samuel Stevens, and took possession of it, and afterwards, fraudulently and with a view to hinder and delay his creditors, procured said Stevens to convey the same to his children. That afterwards, said land was recovered by one Bryant, who, at the instance of said James, conveyed the same to James Read, with the same fraudulent view; who, afterwards, at the request of said James Dobyns, and upon the pay-, naeirt of the consideration, by him, conveyed sixty-one acres of said land to Apollos Dobyns, who had died without issue; and his land, subject to the dower of his wife, had descended to his father, said James Dobyns; and the balance of the tract, being seventy-five acres, to the three infant children of said James, to-wit: James R. Dobyns, Lewis C. Dobyns and Thornton Dobyns, (the latter of whom had also died in infancy;) who by the terms of the deed, were to pay one hundred dollars, to each of their infant sisters, Mary, Asseneth and Char-, lotte, and prayed that said land might, be subjected to. the payment of his debt.
A will wholly. eTb^the^esta» tor>1S valid with, out any subscribing witness.
wft^s aVtht whole will &sig, is sufficient to susi There¡sno”prescribed number quire^to^prové ^ill when it is it may be estabhshedby asingle one, whose tcstimony (if beHevea,) proves its existence, its loss or destruction after the testator's death, and that it \vaa entirely in his hand-writing.
While this case was pending, Elizabeth R. Dobyns, the widow of said Apollos, filed her bill, setting up the will of her husband, which, she alleged, was lost or stolen after his death, by which he had devised to her, all his real and personal estate, including the sixty-one acres of land in contest, and charged, that one Edward L. Bullock had purchased the said land, under the execution of said Baker, issued after the commencement of' Baker’s suit, as the property of said James Dobyns, tmd made said Bullock, and James Dobyns and D. Bell, the administrator of Apollos Dobyns, defendants.
This case was, by the consent of the parties, consol-. idated with the suit of Simon R. Baker. But being submitted to the Court before the other case, the will was established by the decree of the Court. And at a subsequent term, Baker filed an amendment, setting up this matter and praying that the credit indorsed on his. execution by reason of the sale of said sixty-one acres,, naight be set aside.
At a subsequent term, Baker’s bill was dismissed, by. the Circuit Court, and the amendment, which prayed that the credit on the execution might be set aside, was dismissed without prejudice. From which decree, he has taken an appeal to this Court.
We ¡perceive no error in. the decree of the Circuit Court in sustaining the will of Apollos Dobyns.
A will wholly written and signed by the testator him- ..... . . sell, is valid without any subscribing witnesses. And the proof of a single witness, that such will was wholly Written and signed by the testator, would be competent qnd sufficient to sustain it, if believed by the Court or triers. So, if a will thus executed, should be lost or destroyed, no specified number of witnesses is required to sustain it. If its loss, or destruction, after the death of the testator be shown, and its contents be satisfactorily made out, the proof of its having been wholly written and signed by the testator himself, by a single creditable witness, will suffice.
A father buys land, but being in debt, has the deed made to his Children, to defraud his creditors; the land is then taken by a paramount title; fnend ofhthe&a ther buys it, on long credit, of tne successful claimant, and hhnseíf'with an Intention that the tuajiy mpayeVthp consideration, & gain conveyed to the children. Afferwards, when one of the chih dren comes of age, he, with Ins pwn money .pays part ot the consideration, &obtains the title to part of the land: Tield, that this latter is a valid conveyance.
An ex’on is credited by the proceeds of land sold 38 the property of an heir; but which a devisee afterwards recovered ; the tírédit- or seeks, in a pending suit, to have the credit on the ex’on,cancelled; held, that as the purchaser was no party, and it did not appear that his money had been refunded, this complaint-was rightly dismissed without-prejudice. Declarations of a vendor, madebefore the sale, are competent evidence against a purchaser claiming under him; those made after the sale, are not.' So, held also, as to cestui que trust, that where a party, to de-' fraud his creditors, had procured a secret agent to take and hold the title to land—■ to be conveyed ultimately to that party’s children —his declarations made before the conveyance to the children, are admissible to destroy their title.
*222 The existence of the will, after the death of Apollos, is clearly proved, and circumstances tending strongly to corroborate and sustain the allegation of its loss or destruction.
The contents of the will are also clearly made out, and it is satisfactorily proven by two witnesses, that the body of the will was in the hand-writing of the testator, and that his signature was attached to it in his own hand-writing.
We cannot conceive that other or better testimony is necessary.
But as she claims the sixty-one acres as a volunteer, she cannot occupy a better condition than the devisor under whom she claims. It will therefore be necessary to investigate the fraud charged in Baker’s bill.
We have no doubt that the conveyance made by Samuel Stevens to Apollos and his two brothers, at instance and request of their father, James Dobyns, was made to hinder and delay the creditors of said jatnes atl¿[ was fraudulent and void. But the land was 7 . afterwards recovered from them, by Bryant, by virtue °f a suPei'i°r and paramount title. Read purchased out the title of Bryant, upon a long credit, intending to let James Dobyns or his children have it, on their paying the consideration to Bryant.
Before the money become due, it appears that Apolios had arrived at age, was doing a good business as a , , , 00 . saddler, and actually paid the money, and received a ¿[eed t0 himself for the sixty-one acres, settled down J ... upon it, and lived upon it, claiming it as his own until his death, under the title of Bryant.
Though there is some testimony tending to show, that the money was furnished to him by his father, to make the payment: the competency of the testimony is questioned, and if admitted, is by no means satisfactory. We are, therefore, constrained to sustain the decree of the Circuit Court, dismissing the bill ás to the land conveyed by Read to Apollos Dobyns.
So, likewise, was the opinion-of the Court correct, in dismissing the amended bill of Baker, praying that the credit endorsed on the execution might be set aside,
Recital of facts held sufficient to establish the conelusion, that land was purchased by one person, and afterwards conveyed to the children of another, the consideration being ostensibly paid by one of them then of age—was, in fact, purchased for the father, held in trust for him, and, as to the part conveyed to his infant children, paid for with his money —the whole arrangement designed to defeat his creditors,and, therefore, the title as to the part paid for by him, Within the statute against fraudulent convoyan ces, and void.
*223 It is not alleged in said amendment, that Baker had refunded the purchase money to said Bullock, who was the purchaser of said land. Nor is any case made out, if all the allegations of the amendment were taken as true, going to show, that he had been made responsible to Bullock, or sustained any injury in consequence of the decree of the Court setting up the will of Apollos. Nor has he made Bullock a party, who is interested in the matter, and thus furnished him with the opportunity, to sanction or opp.ose the steps which he proposed to take.
Before we investigate the residue of the decree, we will dispose of an objection made to so much of the depositions of John Wallingsford and John Glass, as details the confessions of James Dobyns.
It is well established, that the declarations of a vendor affecting his title, made before he parts with it, are competent against the vendee subsequently deriving title under him. But declarations made afterwards are incompetent.
It is evident, in this case, that the title was held by Read in secret trust for the use of James Dobyns, and subject to his direction and control as to the persons to whom the conveyance should be made upon the payment of the consideration, and that he was looked to, and regarded himself as looked to, for the payment of the money. He had a usufructuary interest in the land, and the entire direction of its disposition, and Read was the mere agent holding the title for the benefit of him and his family. With this view of the attitude occupied by him, we can perceive no principle or reason, consistent with analogy, which would exclude, as incompetent, his declarations made before the title was vested in his children. If the declarations of the vendor are competent, the declarations of him who is Cestui que trust, are equally competent. We are, therefore, clearly of opinion that, so much of the declarations of Dobyns as are proved by the witnesses as having been made when the title was in Read, are competent.
Admitting those declarations, in connection with the other proof in the cause, it is satisfactorily made out, *224 that about the year 1803, when Apollos was a tender infant, and perhaps the only child then bora, James Dobyns purchased the land, by quit claim title, from Samuel Stevens, and took possession of it, and has lived on it ever since. That by his request, in 1808, the deed was made to his three infant children then bom, Apollos, George and Edward. ■That when the land was recovered from them by Bryant, that, by his request, Read purchased it from Bryant, at four years credit, and took a deed in his own name. That when the note for the consideration fell due, judgment was recovered* and execution sued out upon it. That when Read was pressed for the money, he sent the sheriff to Dobyns* threatening to give up the land to be sold if the money was not paid. That Dobyns procured a stay of the execution promising to pay the debt in some short time, out of the proceeds of the sale of his interest in some dower slaves of his mother; that he did, about this time, sell said dower slaves, for from three to five hundred dollars; and that afterwards, the money was paid, and, at his request, a deed made to three of his infant sons, imposing upon them and the land, a charge in favor of his three infant daughters, of one hundred dollars to each. During this whole period, from 1803 up to the decree, he was in embarrassed and insolvent circumstances. It is true, that the money was paid by the hands of Apollos. But we can regard him in no other light than as the mere instrument of his father, and the whole scheme as a trick to cover over and conceal the fraud.
Apollos had barely arrived at age, and had been but a short time in business. We cannot presume that he was able, or did in fact pay for more out of his own pocket than the quantity conveyed to him. If so, why was not the conveyance of the whole made to him? And why did ho have the part which he received, laid off and conveyed to him distinct and separate from the rest? Can it be presumed, that he, out of the scanty means which he possessed, paid for, and gratuitously bestowed upon his infant brothers and sisters, the land conveyed to them? We cannot believe it. Such a con *225 elusion is not only irrational,but is contradicted, by the deliberate declarations of his father, that it would be paid out of the proceeds of the dower slaves. If therefore, there be no technical, legal impediment, we conclude that the land of the three infant sons is liable to the satisfaction of the complainant’s demand.
Every device of an insolvent debtor, to defraud, ■hinder or delay creditors, is void ■ait common law, If he invest money of his own in land, which is conveyed, directly, or by mesne conveyances, t¿ his children, to keep it out of the reach of hits creditors, th^ conveyance, as against prior creditors, will he void & the land subject to then: debts. And th© fehancellor will ferret out the fraud, and give the land its proper direction.
We approve the principle settled by the majority of this Court, in the case of Doyle &c. v. Sleeper &c. 1 Dana, 531 to 550. And this case falls within the same principle. Bayard v. Hoffman, 4 Johnson's Chancery Rep. 453-4-5.
If the property was in fact held in the names of the children, in secret trust for the use and benefit of the father, it falls within the provision of the thirteenth section of the statute regulating conveyances, and is subject to the like debts as if held and possessed absolutely by the father.
But fraud is odious at common law, and any trick, device or stratagem, resorted to by an insolvent debtor, to hinder, delay or obstruct, creditors in the exaction of preexistent debts, is fraudulent and void. And the shallow device of procuring another to convey property paid for by his money, to his children, which, but for the trick or device to evade creditors, would and ought to have been conveyed to himself, cannot sanctify the deed, or work an evasion of the scrutinizing eye of the law.
The common law, when correctly understood and applied, is sufficiently broad and deep, and penetrating in its provisions, to uncover the stratagem, and expose the fund to the payment of the honest demands of preexisting creditors.
Besides, in this case, ther'e is no pretence that the conveyance was intended solely as an advancement to the children; or that it was a reasonable provision for them, when the indebted and insolvent condition of the father is taken into consideration. The motive, it is evident, was to provide a fund for the benefit of the father, placed beyond the reach of honest creditors. We deem it the duty, as it is within the legal competency of the *226 Chancellor to ferret out the fraud, and give to the property its just and appropriate destination.
Time does not begin to run to bar a bill, to be relieved against a fraud, until the fraud is discovered;andheW,that Where a bill was filed to set aside a fraudulent conveyance, and it did not appear when the fraud was first discovered—there was no bar, especially, as time was not relied on in the answer.— Where there is ho bar to the levy of an ex’on, there should be none to a bill to set aside fraudulent deeds,in the way of the levy. A father bought land, and to defeat his creditors, had it conveyed to a son,charged with a payment to a daughter; the son died, the father inherited the land, and his creditor had it levied on & sold: held, that the purchaser shall take it dischargedoftlicpayinent 'to the daughter.
There is no ground for refusing relief in this case, as intimated in the decree, on account of the lapse of time.
There is no statutary provision, which would interpose an absolute bar; nor is any relied on in the answers. Time does not commence running in chancery, in cases of fraud, until the fraud is discovered; and it does not appear, when it was first discovered. Besides, the complainant seetns to have been vigilantly engaged in prosecuting his claim, for many years, without success, and filed his bill in this case within about eleven years after the conveyance was made to the children. And their father has continued, in the mean time, and for a long time before, in the possession and enjoyment of the premises, exercising all the ostensible rights of owner. No bar exists at law against the levy of the execution, and none should'be permitted to interpose in this case, to obstruct the chancellor in uncovering the fraud.
But it seems that the interest of Thornton Dobyns, by his death, descended upon his father, and has been sold under the execution of Baker, and purchased by Bullock. He should be permitted to enjoy said interest, free from the charge upon it in favor of Thornton’s sister.
It is therefore decreed by this Court, that the decree, as to the interest of the infant children James R. and Lewis C. Dobyns, as well as to the charge upon their parts in favor of their sisters, be reversed, and the cause remanded, that a decree may be rendered consistent with the principles above settled. And that the decree in favor of Elizabeth R. Dobyns, against Bullock and others, establishing the will of Apollos Dobyns, be affirmed.