## Tudor vs. Tudor.

Case 40. | 17m383
| 96  125|

APPEAL FROM MADISON CIRCUIT.

PET. EQ. | 17bm383.
| o107 563|

1. In a contest in regard to the validity of a will assailed on the ground of incapacity in the testator, it is not competent to introduce proof of the good character of the plaintiffs, and of their father, a son of the testator.
2. This court will not reverse a judgment on account of the exclusion of testimony in depositions, when the party has had the benefit of the same testimony by other evidence.
3. When a will has been made and duly published, the striking out by the testator of one or more devises, by which the will in other respects is not changed, amounts to a revocation *pro tanto* only, but does not affect the remainder of the will. (*Overall vs. Overall*, 6 *Littell*, 502; *Wells vs. Wells*, 4 *Monroe*, 154; *Brown's will case*, 1 *B. Monroe*, 56.)
4. It is not indispensable to the proof of publication of a will, that the subscribing witness shall swear that the testator acknowledged the will in his presence. Such an acknowledgment is implied in the request that the witness should attest the instrument, and the attestation of a witness proved to be dead, in the absence of all proof, is presumed to have been made according to the requirements of the statute.
5. Two witnesses attest a codicil to a will—neither of them is produced to prove its execution—but the writer of the codicil is produced, who proves its publication by the testator, and that the subscribing witnesses attested it in his presence. Though this is but secondary evidence, yet if received without objection in the court below, no objection can avail to it in the court of appeals. And it was proof of a publication according to the requirements of the statute.
6. It is not error for the court to refuse to instruct the jury upon an abstract proposition which the evidence does not conduce to prove.

[The facts of the case are stated in the opinion of the court.—REP.]

*S. Turner* for appellants—

The circuit court erred in several particulars, in ruling the law of the case, and in refusing a new trial.

1. The plaintiffs are the heirs at law of Samuel Tudor, who was a son of Valentine Tudor, the testa-

TUDOR
vs.
TUDOR.

tor, who died before his father.    The testimony shows no plausible reason why the children of Samuel were cut off, in a great measure, from any provision by the will of their grandfather, unless it be found in the incapacity of the testator.    That Samuel Tudor was a man of character and cleverness, and a favorite with his father in his life time, was proved by sundry depositions, which, on exceptions by the defendant, were excluded by the court from the jury. Of that we complain, as an error to our prejudice.

2. The court erred in the instruction given at the instance of the defendant.

It is insisted that when the question was submitted to the jury, arising out of the alterations made in the will, it should have been also left to the jury to say whether the alterations were made with his consent, and whether with the intention of revoking the whole will, or only a part of it; and whether the testator then had capacity to make or revoke a will, or alter it in any particular.    This idea was rejected by the court, in each of the instructions given at the instance of the defendants.    Nor does the verdict of the jury respond to three important facts involved. The jury do not find whether the parts stricken out now constitute part of the will or not.    (*Overall vs. Overall, Litt. Sel. Ca.*, 504.)

3d. There was not one word of proof by either of the subscribing witnesses to the fourth and last codicil.    Their absence is not accounted for, nor is their hand writing proved.    Yet the jury find that codicil to be part of the will; and this result has been brought about by the defendants' instructions, based upon the testimony of Royston, who proved that he wrote the codicil, but did not subscribe as a witness to it; that the subscribing witnesses put their names to it in his presence, and that the testator was of disposing mind.

The court did not tell the jury, in any instruction, that the attestation of the subscribing witness should be proved by *such witness*, or one of the subscribing

witnesses, or make out a proper case for offering other testimony. The instruction was, therefore, misleading.

4. What has been already said will apply particularly to the first codicil, of the date of 18th October, 1845. To this codicil there are two subscribing witnesses. One died before the trial—the other testified. He proved that he signed as a witness, in presence of the testator, at his request, and that he knew the hand writing of the other witness to the codicil, and that it was genuine, and that the testator was in his proper mind. This is all the proof in regard to this codicil, and it is not sufficient to answer the requirements of the law, which requires the witness *to attest the signature or acknowledgment* of the testator. (*Griffith vs. Griffith*, 5 B. *Monroe*, 511 ; *Powell on devises*, 83, 91, 642, and authorities there cited.) It is not proved that the deceased witness signed in presence of the testator, and of the other witness. Leroy Tudor has a right to avail himself of this error. (*Turner vs. Patterson*, 5 *Dana*, 295.)

5. It is contended that a capacity to make a will not only requires that a man should know his property and his children, but that he shall be capable of knowing his obligations to them and what he has given, but to make a rational distribution of his estate. The instructions do not embrace these views.

6. The court erred in refusing the first instruction asked by the plaintiffs, which requires *sound mind and memory* to constitute capacity to make a will. (*Shropshire vs. Reno*, 5 *J. J. Marshall*, 92.)

*Caperton* and *Burnham* for appellees—

The counsel for the appellees in this case do not deem it necessary to make any lengthy argument upon the facts in this case. That the paper set up and relied upon as the last will and testament of Valentine Tudor, deceased, with the codicils annexed, contains his true mind and purpose with regard to the disposition of his property when dead, they

think to be demonstrated.   No assault was made upon the will on the score of undue influence, or insufficient authentication.   The sole ground relied upon, is a lack of capacity, and although a number of witnesses—many of them boys, others so ignorant themselves as not to be able to write their own names, and others drilled before hand—have tried to make out a case, the jury, who knew all the witnesses, and heard all the testimony, believed—as this court will believe—that old man Tudor was possessed of full capacity to dispose of his estate.

The instructions given covered the law of the case, and none were calculated to mislead the jury. Those refused were rightly refused.   As to the change made by the old man in one part of the will, that does not invalidate it, or require a republication. (*See Wells vs. Wells*, 4 *Monroe*, 133, and the authorities quoted.)   We have no apprehension that the case will not be affirmed.

As to Leroy Tudor, if he has any rights, they are saved by *sec.* 38, *chap.* 106, *Revised Statutes, page* 700. And there is no cause of reversal on his not being brought before the court.

As to the codicil to the will, to prove which no witness was introduced in the circuit court, see same chapter and page *Revised Statutes, section* 40.   The record was before the jury, of what had been proved in the county court.

October 10.

Judge SIMPSON delivered the opinion of the court:

This suit in chancery was brought to impeach the validity of the will of Valentine Tudor, deceased, which had been proved and admitted to record in the Madison county court.

The complainants were the children of Samuel Tudor, deceased, who was one of the children of the testator.   The issue presented by the pleadings was tried by a jury, and decided by them in favor of the will; and a decree was rendered by the court in pursuance of the verdict, after a motion for a new

trial had been overruled. From that decree the complainants have prosecuted this appeal.

The want of capacity on the part of the testator was the principal ground upon which the validity of the will was attacked in the court below, and the testimony adduced by the parties was mainly directed to the elucidation of that question. The testimony upon the subject, as is usual in such cases, was somewhat conflicting in its character, but still that which tended to prove the testator had capacity to make a will, was entirely sufficient to sustain the verdict of the jury. There was no evidence of any undue influence, or of the use of any improper means in obtaining the execution of the will; so that the decree establishing it cannot be disturbed, unless some point of law was erroneously decided by the court below, in the progress of the cause, or unless the propounders of the will failed to make the requisite proof of its execution by the testator.

Depositions were taken by the complainants, to prove their own good character, as well as that of their father, Samuel Tudor, deceased. These depositions were excepted to by the defendants, and the exceptions were sustained by the court. The appellants contend that this testimony was relevant to the issue, because it tended to demonstrate that there was no rational motive to influence the testator to exclude them from participating in an equal share of his estate, and therefore their exclusion therefrom must have resulted from imbecility of mind, and a want of capacity by him to comprehend his duty to his children and grandchildren; and consequently that the court erred in sustaining the exceptions to these depositions.

The relevancy of such testimony does not very clearly appear. Its bearing upon the question of capacity is very remote and indirect. The affections of a parent are frequently placed on such of his children as are least worthy of his regard, and whose character and conduct bear no comparison, in point

1. In a contest in regard to the validity of a will assailed on the ground of incapacity in the testator, it is not competent to introduce

proof of the good character of the plaintiffs, and of their father, a son of the testator.

of propriety, to some of his other children. Yet they may be the peculiar objects of his bounty, just because by their misconduct, mismanagement, or want of thrift, they stand more in need of assistance than those do who have been much more energetic, industrious, and exemplary in their conduct and general character. To make, therefore, the character of the children or granchildren a test, or even evidence of the capacity of the testator, would in a great degree restrict the exercise of that arbitrary right with which the owner of property is invested by law, to dispose of it as he chooses, provided he has sufficient capacity for the purpose. Such testimony might lay the foundation of an argument against the justice of the testator, but would tend in a very slight degree, if at all, to manifest his want of capacity. Its bearing upon the matters in issue is too remote and uncertain to authorize its admission in such cases. This question was, therefore, in our opinion, decided correctly by the court below.

2. This court will not reverse a judgment on account of the exclusion of testimony in depositions, when the party has had the benefit of the same testimony by other evidence.

If, however, it were conceded that this testimony was proper and should have been admitted, its exclusion by the court would not authorize a reversal of the decree, under the circumstances of this case. The fact which it was intended to establish, was fully proved by other evidence in the cause, which was permitted to go to the jury, and consequently the appellants were not prejudiced by its rejection.

It appears, however, that after the will and codicils had been duly made and published, an alteration was made in the body of the will, at the testator's instance and request, by striking out the word "hundred," in two bequests, one of five hundred dollars, and the other of seven hundred, by which the bequests were reduced from the amounts as they were first written, to five and seven dollars, respectively. This alteration was not made in the presence of the witnesses who attested the will, nor was there any subsequent republication of it, either expressly or by legal implication. It is, therefore, contended

that by such alteration the will was rendered invalid, and should have been so declared by the court below.

The doctrine is well settled, that after a will has been made and published according to the forms of law, it will not be revoked by the act of the testator, in striking out one or more of the devises, by which the other provisions of the instrument are left unaffected, and which were not intended to be revoked by him. The alteration will amount to a revocation *pro tanto*, but not of the whole instrument.

The statute concerning wills provides that no devise, or any clause thereof, shall be revocable, but by the testator's or testatrix's destroying, cancelling, or obliterating the same, or causing it to be done, in his or her presence. Under this provision, any clause in a will may be revoked, by obliteration, and the balance of the will remain valid and unaffected if the obliteration were made by the testator himself, or by his direction and in his presence, with the intention to revoke that clause of the will only, and not to revoke the whole will. And after such a partial revocation has been made, no republication is necessary to the validity of the balance of the will. (*Overall vs. Overall*, 6 *Littell*, 502; *Wells vs. Wells*, 4 *Monroe*, 154; *Brown's will*, 1 *B. Monroe*, 56.

There are four codicils to the will, and it is contended that the execution of the first and fourth of them was not proved according to law. There were two subscribing witnesses to each of one of these two codicils. One of the subscribing witnesses to the first codicil was proved to be dead, and his signature was proved to be in his hand writing. The other subscribing witness proved that he signed his name as a witness to the codicil, in the presence of the testator, and at his request. The objection to this proof is, that the living witness did not testify that he saw the testator sign, or heard him acknowledge, the execution of the codicil. But the request lo attest it was an implied acknowledgment of its

3. When a will has been made and duly published, the striking out by the testator of one or more devises, by which the will in other respects is not changed, am'ts to a revocation *pro tanto* only, but does not affect the remainder of the will. (*Overall vs. Overall*, 6 *Littell*, 502; *Wells vs. Wells*, 4 *Monroe*, 154; *Brown's will case*, 1 *B. Monroe*, 56.)

4. It is not indispensable to the proof of publication of a will, that the subscribing witness shall swear that the testator acknowledged the will in his presence. Such an acknowledgment is implied in the request that the witness should attest the instrument, and the attestation of a witness proved to be dead, in the absence of all proof, is

TUDOR
vs.
TUDOR.

presumed to
have been made
according to the
requirements of
the statute.

execution by him, and it would seem to be entirely superfluous for a witness, who is requested by the testator to attest a will or codicil, to ask him if he acknowledges its execution. Such an acknowledgment is in effect contained, and necessarily implied in the request, that the witness should attest the instrument. The attestation of the witness who was dead, is presumed, in the absence of all proof on the subject, to have been made according to the requirements of the statute.

5. Two wit-
nesses attest a
codicil to a will
—neither of
them is produc-
ed to prove its
execution—but
the writer of the
codicil is pro-
duced, who
proves its publi-
cation by the
testator, and
that the subscri-
bing witnesses
attested it in his
presence. Tho'
this is but secon-
dary evidence,
yet if received
without objec-
tion in the court
below, no objec-
tion can avail to
it in the court of
appeals. And it
was proof of a
publication ac-
cording to the
requirements of
the statute.

Although there are two subscribing witnesses to the fourth codicil, neither of them seems to have testified on the trial, nor was their absence accounted for, or their hand writing proved. But the person who wrote the codicil, and who is not a subscribing witness to it, proved that it was made and published by the testator, and the two subscribing witnesses attested it in his presence. This, it is true, was only secondary evidence, and it might have been objected to by the contestants of the will, inasmuch as no foundation was laid for its introduction. But as it was admitted without objection, and no question on this point was made in the court below, it should not now be permitted to be made in this court for the first time. Besides, the proof made before the county court, with respect to the execution of the will and codicils, being uncontradicted, would of itself have authorized the finding of the jury, so far as this point alone was involved in the issue. And, if the proof of the execution of the last codicil were regarded as insufficient, it would only produce a retrial, so far as that codicil was concerned, and would not affect the sentence of the court, establishing the will and the other codicils. But we regard the execution of this codicil as sufficiently proved by the testimony of the person who wrote it. The statute requires that a will, to be valid, if not wholly written by the testator himself, shall be signed by him and be attested by two or more competent witnesses, subscribing their names in his presence. It does not,

however, prescribe the manner in which these facts are to be proved; that is determined by the rules of evidence. All the facts necessary to the validity of the codicil were proved in this case; not, it is true, by the best testimony on the subject, but by testimony that was competent, because it was not objected to.

Various objections are made to the instructions which were given to the jury by the court, at the instance of the defendants. The instructions which were so given are as follows, viz:

1. "If the jury shall find from the testimony that the will and codicils in contest were executed by Valentine Tudor and subscribed by him, in the presence of the subscribing witnesses, and that the witnesses subscribed the same in his presence, and that he then was of sound mind, they ought to find for the will and codicils.

2. "If they shall find from the evidence that when he made the will, as supposed in the above instruction, he was of sound mind, they ought to find in favor of the will, notwithstanding they might suppose he was not of sound mind at the date of the codicils. If they find he was of sound mind at the making of any of the codicils, they ought to find in favor of such codicil.

3. "That according to law, soundness of mind in making a will, is capacity to know his children and his estate, and to dispose of the same in a rational manner, according to a fixed purpose of the testator."

The first of the foregoing instructions is objected to, on the ground that it did not inform the jury that the execution of the will and codicils in the manner described, should be proved by the subscribing witnesses. But this objection has no validity, because the court had to decide the competency of such testimony as was offered to prove these facts, and the jury had to decide the case upon the testimony before them. We have already seen that this testimo-

ny was sufficient—having been admitted without objection—to sustain the verdict of the jury. Indeed, no question was made in the circuit court with respect to the proof of the execution of the will, or any of the codicils; but the whole contest was confined to an inquiry as to the capacity of the testator to dispose of his estate.

Another objection made to this instruction is, that it only required the jury to find that the testator was of *sound mind* at the time the will and codicils were executed, without requiring them to find that he was also of sound memory. It is a sufficient answer to this objection to say, that the statute of 1797, (2 *vol. Stat. Laws*, 1537,) under which this will was made, and this suit was prosecuted, expressly provides that every person of the requisite age, being of *sound mind*, and not a married woman, shall have power by last will and testament to devise all his estate. A *sound mind* is all that the statute requires. This expression necessarily includes soundness in all the faculties of the mind; so that the instruction so given was sufficiently comprehensive to embrace soundness of memory as well as of every other faculty of the mind.

Again, this instruction is objected to, because it did not submit to the jury the questions arising out of the alterations which were made in the body of the will; that is, whether they were made with the assent of the testator—whether with the intention of revoking the whole will or only a part of it, and whether the testator had sufficient capacity at the time they were made to revoke his will, or alter it in any particular.

6. It is not error for the court to refuse to instruct the jury upon an abstract proposition which the evidence does not conduce to prove.

The witness who made the alteration proves that he made it at the request of the testator, and there is no proof that it was intended by him as a revocation of his will. It was a mere erasure, and obviously designed to affect that part of his will only in which it was made. The jury could not have found that it was made without his assent, or that it was

made with an intention to revoke his will. The evidence would not have authorized such a finding. The court, therefore, might properly assume that these matters were fully established by the testimony, and omit, as it did, any reference to them in the instruction which it gave to the jury. But the effect of these erasures also depended on the capacity of the testator, at the time they were made by him. If he then had capacity to revoke his will, they operated as a partial revocation of it; but if he had not such capacity, they produced no effect whatever. As they were made after the time the last codicil was executed, his mental condition at the time they were made was not involved in the questions of fact submitted to the jury by the instructions. The soundness of his mind at the time the will and codicils were made, and not at any subsequent time, was alone the subject of inquiry under the instructions. As the testimony on this point was contradictory, it should have been passed upon by the jury; merely, however, for the purpose of determining whether the will should stand as it was originally written, or whether the erasures should take effect, and operate as a revocation *pro tanto*. For if the erasures were made when the testator was not of disposing mind, they would be wholly inoperative, and the will would remain in the condition it was before the erasures were made.

But the complainants in the suit were not interested in the bequests which were altered by the erasures. The establishment of the will and the codicils was decisive against their right to the relief sought by them. The instruction of the court, therefore, embraced all the matters in which they were interested; and, so far as they are concerned, it is wholly immaterial whether the alterations made in the body of the will are to have effect or to be inoperative. Consequently, they have no right to complain of this error in the instructions, not having been prejudiced by it.

Leroy Tudor, who was a defendant in the court below, and does not seem to have participated with the complainants in their efforts made there, to vacate the will, is a joint appellant with them in this court. But like them, he has no interest in the bequests which were obliterated. The one of five hundred dollars was, it is true, a bequest to him. This bequest had, however, been revoked by the first codicil made by the testator, and he is not, by the will, entitled to any part of the testator's estate. Consequently he has no interest in the determination of the question, whether the obliteration made by the testator shall be effectual or not.

The definition of what constitutes soundness of mind, given in the third instruction, is also objected to as inaccurate and defective. And to show what was deemed necessary by the complainants' counsel to constitute soundness of mind, the following instruction was asked, and refused by the court:

" A man must have a sound memory and a sufficient mind, and a mind in a proper state for disposing of his estate with reason, according to a fixed judgment, or a settled purpose of his own."

We do not perceive any valid objection to the instruction on this subject, which was given by the court to the jury. It required the testator to have sufficient capacity to know in what his estate consisted, and to dispose of it, in a rational manner, according to a fixed purpose of his own. If he had sufficient capacity to know his estate, the presumption would be that he did know it; and if he did not know it, proof of that fact would tend very strongly to evince his want of capacity to know it, unless his ignorance on the subject was satisfactorily accounted for. And if he had sufficient capacity to dispose of his estate in a rational manner, he must necessarily have had capacity enough, not only to know his children, but also to understand his obligations to them as a parent. We do not, therefore, consider

any of the objections which have been made to this instruction as entitled to any weight.

At first view, there does not seem to be any substantial difference between the instruction that was given, and the one that was refused. But on a closer scrutiny, the latter is objectionable, because it makes use of an expression that is somewhat ambiguous in its import and signification. It requires the testator to be in a proper *state of mind*, to dispose of his estate with reason. If the expression, *proper state of mind*, is to be understood as referring to intellectual capacity alone, it is not objectionable; but if it be understood as refering to the *state* of the testator's *mind* with regard to his feelings, dispositions, or prejudices, it assumes a position that cannot be maintained. If a testator has capacity to understand his obligations to his children, his disregard of such obligations does not render his will invalid, if he be of sound mind; although it might prove that he was not in a *proper state or frame of mind* to dispose of his estate with reason. The feelings and prejudices of a testator, that are unreasonable, may be relied upon as tending to preve his want of capacity, but they do not of themselves constitute incapacity, or establish conclusively the want of capacity, even where the testator may not have made a rational disposition of his estate. Such an instruction would, therefore, be calculated to mislead the jury, and was properly refused by the court below.

Wherefore, there being no error in the proceedings, to the prejudice of the appellants, the judgment, as to them, is affirmed.