## Singleton v. Singleton et al.

(Decided June 22, 1937.)

KENNEDY & KENNEDY and JOHN M. PERKINS for appellant.

R. C. TARTAR for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE RATLIFF—
Affirming.

W. E. Singleton died a resident of Pulaski county, Ky., February 11, 1935, and left surviving him his widow, the appellant, and the appellees, his three children. A few days after the death of Singleton a will written by him in 1923, devising all of his property to appellant, was duly probated in the Pulaski county court. A short time thereafter the appellees filed their action in the Pulaski county court, claiming that in September, 1934, Singleton executed another will devising to them all his property and revoking all previous wills, but that said last will was lost and could not be produced. Appellant denied the execution of the alleged lost will and the proof was taken upon the issues and the county court sustained the motion and set aside the order probating the will executed in 1923 and ordered to probate the alleged lost will executed in September, 1934. Appellant appealed from the order of the county court to the circuit court where the case was tried to a jury and the jury found that the alleged lost will, of-

fered in evidence as of date of September —, 1934, was the last will of Singleton. This appeal follows.

Appellant asks for a reversal upon the grounds (1) the evidence is insufficient to satisfactorily prove the execution of the alleged lost will executed in September 1934; and (2) if such will was executed it was last seen in the possession of the testator and could not be found after his death, and in such circumstances the law presumes the testator destroyed it or had someone else do so for him for the purpose of revoking it, and that there is no evidence of substance tending to rebut this presumption. We will discuss these points in the order named.

Carl Bryant testified that he was staying with the deceased a few months previous to his death and that deceased was afflicted and in bad physical condition. It appears that deceased was afflicted with rheumatism or some other malady which almost if not completely rendered him physically unable to help himself or scarcely move. The witness said that Singleton asked him to sign his name as a witness to a paper which deceased said was his will, and that he and Heron Walden, who was also present, signed the paper in the presence of each other and in the presence of the testator, Singleton, and Singleton immediately signed his name thereto in their presence. Walden's testimony was in substance the same as that of Bryant. He testified that he was passing along the street and the deceased, Singleton, called him into his home and asked him if he would sign a paper for him and told him that it was his will, and he, the witness, signed the paper and the deceased signed his name to the paper by mark. He said that deceased had hold of one side of the pencil and Hubert Singleton, a son of deceased, had hold of the other side of the pencil and with this assistance he made his mark. Neither of the witnesses, Bryant nor Walden, read the paper which they signed, and did not know its contents other than that deceased told them that it was his will. On this point it is contended for appellant that because the witnesses did not read the will or understand its contents their testimony was insufficient to authenticate the will. In Leary v. Leary, 203 Ky. 344, 262 S. W. 293, 294, this same question was presented and was disposed of by this court in the following language:

"Nor can the claim that the paper was not properly established by the attesting witnesses be sustained. They each state that they attested the instrument in the presence of J. J. Leary and of each other, and upon his invitation or suggestion, and that, while the paper was not read to them, and they did not know its contents, Blackburn who had prepared it, stated to them in the presence of J. J. Leary that it was his will, and they so understood at the time, as did all parties present. It is not necessary that attesting witnesses to a will shall know its contents, for in many instances the testator may not desire even the attesting witnesses to know what disposition he has made of his property. It is only necessary that they shall understand they are attesting an instrument as a will, and that there shall be a substantial compliance with the provisions of the statute."

It follows that there is no merit in appellant's contention that it was necessary for the witnesses to read or otherwise be advised of the contents of the will. A copy of the will is filed with the record, and the signature of the testator appears thereto signed by mark and also the signatures of the witnesses Bryant and Walden as shown by their evidence. We think the evidence of these witnesses is sufficient to prove the execution of the will.

The contents of the will were established by the evidence of R. C. Tartar, an attorney who resides in Somerset, Ky. For accuracy we here copy his testimony:

"Gentlemen of the jury, I saw this will; it was some time during the month of September, 1934; I was at the home of Mr. Singleton, he and his son Hubert Singleton were there; this Will was there in a book, and had been put on the table in the corner of the room; The Will was typewritten. I read the Will, and I talked over with Mr. Singleton regarding the contents of the Will; He told me that Judge Parrigan had prepared the Will. The Will was signed by W. E. Singleton, by mark, and was witnessed by Carl Bryant and Aaron Walden, each of their names were signed to the Will. After that time, Mr. Singleton repeatedly talked and consulted with me regarding the Will, he did that several

times. As I said, I read the Will; by its provisions it revoked any and all former Wills or parts of Wills, and it provided that his three children, Hubert, Lawrence and his daughter should have all of his property; after I read the Will, I put it back in the book where it had been. I'll just say this, Mr. Singleton was the most utterly helpless man I ever looked at in my life; he was totally unable to help himself or wait on himself; he had some kind of rheumatism that made him completely helpless; his hands were twisted and bent and drawn; he had a little bell there that he would ring when he wanted anything at all; he was entirely dependent on others to move him or attend to any of his wants; he couldn't talk over the telephone unless some one held it to his mouth and to his ear; he was able in that way to talk over the phone, I talked with him myself over the phone; I talked with him over phone, he called me just a short time before he died. When I last saw the Will it was where he couldn't have gotten to it to saved his life; and even if he had been able to gotten it in his hands, his hands were so drawn and utterly helpless it would have been impossible for him to have destroyed it; he couldn't have torn a piece of tissue paper."

The evidence of Mr. Tartar is uncontradicted and very clearly establishes the contents of the will.

The next point involves the question whether the will executed in September, 1934, which was last seen in the possession of Singleton, the testator, was destroyed by the testator or by someone for him and in his presence for the purpose of revoking it. Since the evidence establishes that testator did execute a will in 1934 revoking all previous wills, the will executed in 1923 was revoked, and it is not material whether the will executed in 1934 was or was not destroyed by the testator or by someone else for him for the purpose of revoking it. The destruction or revocation of such will would not have revived or restored to effect the revoked will. Section 4834 of the Kentucky Statutes reads as follows:

"No will or codicil or any part thereof, which shall be in any manner revoked, shall, after being re-

voked, be revived, otherwise than by re-execution thereof, or by a codicil executed in the manner hereinbefore required; and then only to the extent to which an intention to revive the same is shown thereby.''

See, also, cases cited in notes under the statute supra.

If the will executed in 1934 was revoked Singleton died intestate and the appellant would be entitled to her interest and rights under the statute; on the other hand, if it was not revoked and still in force, then appellant can renounce same as provided in section 1404 of the Kentucky Statutes, and still claim her statutory interests.

It follows from what has been said that it becomes unnecessary for us to determine whether the will executed in September, 1934, was revoked or is still in effect, since, in either event, appellant's interest in her deceased husband's property would be the same.

Judgment affirmed.