# White et al. v. Brennan's Adm'r et al.

June 18, 1948.

Benton, Benton, & Luedeke, John A. Scanlon, John Wm. Heuver and William J. Wise for appellants.

Barbour & Bassman and Martin J. Brown for appellees.

OPINION OF THE COURT BY JUDGE LATIMER—Affirming.

This is an action on a lost will.

Julia K. Brennan died testate, a resident of Fort Thomas, Kentucky, on October 30, 1945. After her death a diligent and extended search was made to discover a will which was believed to exist. The search proved futile. Thereafter, Edward Sheehan was appointed and duly qualified as the administrator of her estate. Later, information reached the administrator that Anthony Dunlap, an attorney of Cincinnati, had written a will for Mrs. Brennan. Dunlap, who was immediately thereafter contacted, informed the administrator that he had written a will for Mrs. Brennan in 1931 and produced a paper purporting to be a carbon copy of the will. He stated that pursuant to Mrs. Brennan's directions he mailed the will to George Kaufman, County Clerk of Kenton County, who was named executor in the will and also with his wife the chief beneficiaries under the will. Diligent search for the will in the Clerk's Office and also among the personal effects of George Kaufman, who predeceased Mrs. Brennan by about 8 years, was also futile. The carbon copy was then admitted to probate by the County Court as the last will and testament of Julia K. Brennan and the Circuit Court of Campbell County upheld the action of the County Court. This appeal is from that decision.

In Caudill v. Loar, 293 Ky. 223, 168 S. W. 2d 757, we find a full and complete treatise on the requisites for probating a lost will. Therein we held, as we have held in numerous other cases, that four things must be shown in order to sustain the probate of a lost will. Proponents must show: (1) Due execution of the alleged will, (2) Its loss or misplacement, (3) Its contents, and (4) Continued recognition of the will by the testator or other acts on his part showing its non-revocation. The correctness, then, of the lower court's decision hinges on whether or not the above requisites for probating the carbon copy as the last will of Julia K. Brennan have been met by the proponents.

We then shall first look at the evidence to determine whether or not the will was executed. Anthony Dunlap, a reputable lawyer, and one time Chairman of the Board of Bar Examiners, Ohio, testified in substance that he had known Mrs. Brennan for a number of years; that she had on numerous occasions been in his home; that he had prepared a will in 1915 for her

when her name was Mrs. Julia Eckle; that he wrote a will for Mrs. Brennan in 1931; that he made a carbon copy of the will; that the will was duly signed by at least two witnesses; and that he thought he was one of the two witnesses but would not say positively that he was. He stated that pursuant to directions of the testatrix he mailed the will to George Kaufman, apparently because Kaufman was named executor in the will, and further because Kaufman's wife was the chief beneficiary of the will. He placed in the record as exhibits pencil memoranda taken at the time he prepared the will, also a carbon copy of a letter which he wrote to George Kaufman and mailed to him with the will.

In addition to Mr. Dunlap's testimony there was also testimony of other witnesses who stated that Mrs. Brennan had said that Mr. Dunlap had written her will for her. Cecelia White, who did housework for Mrs. Brennan, and one of the chief witnesses for the opponents of the will, testified that Mrs. Brennan told her she made a will in 1931, and that Mr. Anthony Dunlap drew the will.

In Baker v. Dobyns, etc., 34 Ky. 220, it was held that no specific number of witnesses is necessary to sustain a lost holographic will since the will need not have been witnessed and one person's testimony would suffice to sustain it.

Appellants contend that the execution of a lost will must be proven the same as the execution of a will that is not lost, and cite in support thereof Bradshaw v. Butler, &c., 125 Ky. 162, 100 S. W. 837. We agree with the above but the question arising here relates to the manner and the kind and quantum of proof required in cases such as this. We yet agree with all that was said in Tackett v. Tackett, 204 Ky. 831, 265 S. W. 336, 337, 338, relative to producing the testimony of subscribing witnesses, but it will be noted therein this exception: "Where such witness exists and is known to reside within the jurisdiction of the court." Mr. Dunlap stated that he could not recall the names of the witnesses. He thought he was one but he would not say positively he was. However, he did say definitely and positively that there were at least two subscribing witnesses; that testatrix signed the will in their presence; and that as sub-

scribing witnesses they signed in the presence of the testatrix and in the presence of each other.

Appellees maintain that it is not necessary that due execution of a lost will be proven by the subscribing witness or witnesses. It is argued further by appellees that the fact of subscription and attestation may be proven by one of the subscribing witnesses or by others even against the testimony of one or both of the subscribing witnesses. Appellees then argue that if due execution may be established even against the testimony of subscribing witnesses (Caddell's Heirs v. Caddell's Ex'r, 175 Ky. 505, 194 S. W. 541; Griffith's Ex'r v. Griffith, 44 Ky. 511; and Montgomery v. Perkins, 59 Ky. 448, 74 Am. Dec. 419), there can be no doubt that it may be established in the absence of their testimony when that absence is properly accounted for. Were this not the case the probate of every will would depend on the longevity of the subscribing witness.

In Tudor v. Tudor, 56 Ky. 383, we said:

"The statute requires that a will, to be valid, if not wholly written by the testator himself, shall be signed by him and be attested by two or more competent witnesses, subscribing their names in his presence. It does not, however, prescribe the manner in which these facts are to be proved; that is determined by the rules of evidence." See also Rowland v. Holt, 253 Ky. 718, 70 S. W. 2d 5.

The case of Tackett v. Tackett, supra, relied on heavily by appellants, holding that a will may not be probated without the evidence of one or more attesting witnesses, if they be living and within the jurisdiction of the court, has no application here. In that case a subscribing witness, although within the jurisdiction of the court, under somewhat suspicious circumstances did not testify because she was allegedly sick. Here, we have the scrivener, a lawyer of considerable repute, who testified that the will was duly executed in accordance with the laws of Kentucky, and that he did not remember whether there were two or three witnesses, but he was certain there were at least two. We think appellees met the test of sufficiency of proof to establish the execution of the will.

This leads us to the second requisite, that is, the proof of loss of the will. In support of their position that there is a failure to show loss of the will, appellants rely strongly on the case of Minor v. Guthrie, 4 S. W. 179, 180, 9 Ky. Law Rep. 113. A careful examination of this case, however, shows that it does not support their contention. It apparently goes no further than to hold that loss of the writing last executed was not shown or its absence explained, or even attempted to be explained, making testimony as to the execution of the will secondary evidence, for which no foundation had been laid. The testimony objected to was to the effect that a second will had been written by the testator and that she had sent her son-in-law for it and it had been given to him. The contestant here was to receive only a trifling bequest by the first will and was entirely cut off by the second. In order for him to benefit, he had to show, first, that no will had been drawn and, secondly, that if drawn, it had been destroyed or revoked by the testator so as to cause the property to pass under the laws of intestacy. The court said:

"The general rule is that if a will be traced to the hands of the maker, and cannot afterwards be found, it is to be presumed that it was destroyed by him animo revocandi. * * * The testimony does not, however, show clearly that the writing last executed came to the hands of the testatrix; but if it did, and the presumption therefrom arose that she destroyed it with the intention of revoking it, yet it, as the oral testimony shows, revoked all former wills, and its presumed destruction would not operate to revive the paper in contest. * * *

"If the loss of the writing last executed had been proven, or the inability of the party to produce it been shown, then the secondary evidence would of course have been competent. The best evidence within the power of a party must, however, be produced; and the character or contents of a writing cannot be shown by oral testimony, unless the party shows that he cannot produce the writing, which is the best evidence of its character and contents. * * *"

In the case of Davis et al. v. Davis' Ex'x, 298 Ky. 310, 182 S. W. 2d 885, where a will had been kept in a box in a chest of drawers and was accessible to

both testator and beneficiary and was not found at testator's death, it was held the presumption that testator had destroyed the will had not been overcome. Appellants seek to raise this presumption of destruction by the testatrix by claiming that George Kaufman, to whom the will was sent by Dunlap, was an agent of the testatrix and that the will having not been found, it must be presumed to have been recovered from Kaufman by testatrix and destroyed by her with the intention of revoking it.

We think the agency theory, advanced by appellants, does not operate to raise the same presumption applicable where the will is in possession of the testatrix. However, the theory is presented that Mrs. Brennan acquired the will back before Kaufman died. There is no proof tracing the will into the hands of the testatrix. To adopt appellants' theory would be basing a presumption on a presumption. If any presumption would arise in this case, it would seem to be that the will was not destroyed because Kaufman had every reason to protect and preserve it. The one thing that poses a difficult and unexplained question, however, is the fact that George Kaufman died almost eight years before the testatrix. What happened to the will during this time? There is no evidence that it ever reached Mr. Kaufman, although he is presumed to have received it, since it was mailed to him. Diligent and extended, but futile search was made for it amongst the personal effects of Mrs. Brennan, the records of the County Clerk's office and the personal effects of Mr. Kaufman. We conclude the appellees met the test in proof that the will was lost.

We come now to the question of proof of contents. Appellants say they are unable effectively to disprove the contents. No difficult question is presented here. It has been held that testimony of an attorney who wrote a will is sufficient to prove the contents of the will. Singleton v. Singleton et al., 269 Ky. 330, 107 S. W. 2d 273. Here, however, we have a carbon copy of the will. Obviously, if the carbon copy is accepted as the true will of the testatrix the question of the contents then of the will is settled.

We discuss now the proof as to the continued rec-

ognition by the testatrix and acts showing non-revocation. Mrs. Brennan from time to time made occasional references to a will and about remembering certain people or having taken care of certain people presumably in her will. The theory of appellants is that these casual references by the deceased about remembering someone in her will were merely devices by which she incurred the favors and attentions of the people with whom she was closely associated. Appellants charge that Mrs. Brennan "found that it was a magic word which would make people go out of their way to serve her and she used it indiscriminately to encourage all those who came in contact with her to expect a future reward." Looking at the testimony on this issue, we find:

(1) Martin J. Brown, an attorney who was a second cousin of Mrs. Brennan, and who apparently would have benefited upon the court's refusal to probate this instrument, testified that in October, 1944, he visited Mrs. Brennan at the hospital and asked her if she had made any preparation to take care of the disposition of her property in case she should die, and that she said: "Yes, I have taken care of that." Brown further stated that he talked with her in November of the same year while accompanying her on a train trip to Florida and that he stated, "Julia, that was a personal question I asked you in the hotel," and that she replied, "Yes, that was a personal question but it so happens that I did make a will and that Mr. Dunlap made that will for me." Now bear in mind this was said about six years after the death of George Kaufman.

(2) Edward Sheehan testified that Mrs. Brennan told him she had executed a will and that Mr. Dunlap had taken care of it for her.

(3) Florence Brennan testified that Mrs. Brennan had told her that she had taken care of Mrs. Kaufman and that it was in writing.

On the other side of the ledger appellants introduced Mrs. Cecelia White, a house worker who had worked for Mrs. Brennan occasionally. Mrs. White testified that Mrs. Brennan told her some time during the Spring of 1945 that she had made a will in 1931 but that she had destroyed this will. It would seem strange that Mrs. Brennan would talk to Mrs. White, who was

only a housemaid, about destroying the will when she did not mention such fact to any of her friends. At any rate, the chancellor saw fit to believe the testimony of the other witnesses on this issue, and we believe there is sufficient evidence in the record to support his findings on this proposition.

Appellants make much of the fact that there was some estrangement between Mrs. Kaufman, the chief beneficiary of the will, and Mrs. Brennan, but the fact remains that the two were reconciled and Mrs. Brennan went to live with Mrs. Kaufman and remained there until she died. Also, the trouble really seems to have been between Mrs. Brennan and Mrs. Kaufman's daughter rather than between Mrs. Brennan and Mrs. Kaufman.

There is yet another matter which, while not entirely controlling, has its position of influence here. It was agreed that this cause be submitted both to the County Court and Circuit Court without the intervention of a jury. We must, therefore, give the same weight to the findings of fact by the chancellor as to that of a jury, and if there is evidence in support thereof, we will not disturb those findings.

The County Court, sitting as Judge and jury, handed down an exceedingly clear and well written opinion in admitting the carbon copy of the proffered will to probate. The Circuit Court, sitting as Judge and jury, confirmed the action of the County Court.

We conclude, therefore, that the facts as related above not only will support these findings but were such as to justify them in so finding.

Wherefore, the judgment is affirmed.