**HALL'S EX'R et al. v. HAYNES et al.**

Court of Appeals of Kentucky.
March 7, 1952.

Bradley & Bradley, Georgetown, for appellants.

Fred Lisanby, Warner Haynes, Georgetown, for appellees.

LATIMER, Justice.

From judgment based upon verdict of the jury holding an alleged lost instrument to be the will of O. L. Hall, deceased, this appeal is prosecuted.

We have before us a set of complicated facts and complex situations which must be constantly kept in mind in the consideration of the questions presented on appeal. O. L. Hall, a single man, died July 27, 1948, a resident of Scott County. It appears that on the 19th day of November, 1946, he executed a will in which appellant, J. C. McKnight, was named the executor. By the will, McKnight was given $1000, and a friend, A. B. Morgan, was given all the residue of Hall's property, except certain real estate which was given to John

L. Anderson for life, with remainder to A. B. Morgan.

For about three years prior to his death, a Mrs. Linda Haynes had been living with Hall, appellees say as a nurse and housekeeper, appellants claim that Hall held her out at times as his wife, though they were never married.

It appears that Hall and Mrs. Haynes had gone to Florida some time around the first of July, 1948, and while there Hall died. The will mentioned above was duly probated on July 31st, the day after Hall's burial. Soon thereafter Linda Haynes disclosed that she had in her possession a second will wholly in the handwriting of Hall dated June 23, 1948, wherein he revoked his prior will and left what is known as his "dispensary" property to Linda Haynes without any disposition whatsoever of the remainder of his estate. While this holographic will was in the possession of Linda Haynes she showed it to a friend by the name of Ware some two or three days after Hall's burial. It was then shown to J. T. Hall, uncle of O. L. Hall, deceased. They took it then to Judge G. G. Barkley, County Judge of Scott County, and presented it to him. Both Judge Barkley and Mrs. Zella Gibson, the Judge's stenographer, read the will. Prior to that the will had been shown to Warner E. Haynes, attorney of Linda Haynes (who, however, is no relation of Linda Haynes). Mrs. Haynes then made an exact copy of the will except the signature thereto and gave this copy to J. T. Hall. Most, if not all those who saw and read the will were acquainted with the handwriting of the testator and stated that the will was entirely in his handwriting and bore his signature and that the copy and original were identical as to contents. Some two or three days later she gave the will to John E. Morris, a business associate of A. B. Morgan, the chief beneficiary under the first will, for safekeeping. This is the last time she ever saw the will.

J. T. Hall, who would inherit the undevised estate, insisted that Linda Haynes have the will probated. Because she failed to produce the will for probation she was arrested by a warrant sworn to by J. T. Hall and placed in jail. The evidence shows that at the time she was arrested she was driving the car of John E. Morris and that after she had been placed in jail both Morris and Morgan immediately tried to get her released on bond. At one time when Mr. Morgan visited Linda Haynes in jail, the jailer overheard the two talking about the will and heard Linda ask him to get Morris to bring "that thing" so that she could get out of jail. After Morgan and Morris failed to get her out of jail, she then had Morgan and Morris arrested. The testimony shows that Morris told Linda's attorney that he could not get the will as it had been sent to a handwriting expert.

Proceedings were started in the Scott County Court to vacate the order probating the first will and have the second will probated. The court set aside the order probating the first will and ordered the second probated. Appellants appealed to the Scott Circuit Court, alleging undue influence, mental incapacity and further that the second will was not the will of O. L. Hall. Trial resulted in the judgment above mentioned.

Appellants are here urging reversal on the grounds: (1) indirectly, that there was an absence of necessary proof to establish a lost will; (2) that they were entitled to and should have been given a peremptory instruction; (3) incompetent testimony admitted by the court; and (4) error in refusal to permit proof that first will had been probated, followed by admission of evidence of the proceedings covering probate of the second will.

■ The first proposition becomes important in view of the fact that appellants denied that this second will was the will of O. L. Hall, deceased. This denial placed upon proponents of the will the duty of following the necessary steps in the establishment of a lost will, namely, due execution, its loss, its contents, and continued recognition. Caudill v. Loar, 293 Ky. 223, 168 S.W.2d 757; White v. Brennan's Adm'r, 307 Ky. 776, 212 S.W.2d 299, 3 A.L.R.2d 943

■ In view of the facts above, it becomes obvious that there is no merit in appellants' contention that there was a failure to show: (1) the existence of the will, nor (2) reason for not producing same for probate, nor (3) the contents thereof. The court properly refused a peremptory instruction.

■ The more serious question is raised relative to incompetent evidence. At first blush it would appear that the testimony of Linda Haynes, which included circumstances as to the execution of the holographic will, the note written to Morgan by Mrs. Haynes while she was in jail, and the testimony as to having Morgan and Morris arrested were incompetent, but upon mere serious reflection, it appears that under the circumstances of this case this evidence which, otherwise may have been irrelevant and incompetent, may become competent. Had the opponents of the will admitted the existence of the holographic lost will and based their attack on the grounds of mental incompetency, thereby relieving the proponents of the duty of showing the reasons for failure to present the original will, the evidence mentioned by appellants would have been incompetent. We are first confronted with the fact that the opponents of this will apparently allowed themselves to become entangled in contradictions. They denied the allegations that the will was the will of O. L. Hall and thereby placed upon the proponents the duty of establishing the lost will. They attacked upon the ground of mental incapacity due to the fact that O. L. Hall was an alcoholic and at the time he executed the will was in an intoxicated condition. The mere fact that the testimony of Mrs. Haynes, on the question of competency, was necessarily limited to the day the will was made and incidentally disclosed the execution of the will does not render her testimony incompetent. It could not be said that it is imperative to prove the actual execution of a holographic will, since such wills most likely are written out of the presence of any other person. It is only necessary to prove the existence of a holographic will by proving same to be entirely in the handwriting of the testator. This alleged incompetent testimony of Mrs. Haynes relates to the acts of the testator on the day appellants say he was mentally incompetent due to alcoholism. This testimony addresses itself to the mental competency of the testator at that time and not to the fact of the execution of the will.

■ The most challenging question presented is that of the testimony relating to the arrest of Morris and Morgan. It is fundamental that evidence in order to be competent must have some logical relation with the issue to be proved and must be pertinent thereto. On the face of it, it would appear that the arrest of Morgan and Morris is a collateral fact without any logical probative value, and entirely unrelated to the issue in this case. The rationale back of the statement heretofore made that appellants placed on the proponents the burden of proving all the elements of a lost will now becomes apparent. The second requirement is proof of loss of the will. We may say further in the consideration of this case that Mrs. Haynes is not the only person involved in this action. The uncle knew Mrs. Haynes had the will. He was insistent that she produce it. His interests were over and above hers. He knew the holographic will to be in existence, he had seen it, he had read it, he had a copy of it and he wanted the will produced. In order to accomplish this purpose, he swore to a warrant and had the person, whom he knew to have the will in possession, arrested for not producing it. She, in turn, had Morris and Morgan arrested for not producing the will since she knew they had it. The rule should not permit appellants justifiably to complain about their position, after having placed the proponents of the will in the position of necessarily showing reasons why the original will was not produced, or if lost, that due and diligent effort had been made to find it. It has been held generally that any evidence showing that an opposing party has attempted to suppress or fabricate evidence is admissible. We have here, under the facts of this case, what might appear to be a concealed will, rather than a lost will. Obviously, in this instance, evi-

dence of the arrest was not inconsistent with an attempt to show diligence in effort to find and reasons for failure to produce the original will, a burden thrust on the proponents by appellants.

 Under the usual orderly procedure, evidence of the proceedings of the probate of the second will would have been incompetent, but here we are faced with the same proposition that the opponents of the will may reasonably expect what they deliberately exact. This case sets its own pattern of relevancy and competency. Under the facts above, we see no prejudicial error.

The judgment is affirmed.