# Davis et al. v. Davis' Ex'x.

Oct. 10, 1944.

P. H. Vincent and J. D. Atkinson for appellants.

John F. Coldiron and L. B. Bruce for appellee.

OPINION OF THE COURT BY JUDGE CAMMACK—Reversing.

This action involves the question of probating a paper said to contain the contents of a lost will of R. L. Davis, who died June 14, 1943. The jury found the paper to be the lost will of R. L. Davis, and the appeal is from a judgment on that verdict.

Reference to the case of Caudill v. Loar, 293 Ky. 223, 168 S. W. 2d 757, and cases cited therein, will show that the contents and due execution of alleged lost wills may be established by parol proof. However, a heavy duty rests upon the propounder of such a will, because he must show (1) the due execution of the alleged will; (2) its loss; (3) its contents; and (4) its continued recognition by the testator or other acts on his part showing its non-revocation. With these tests in mind we turn to the evidence in the case before us.

It is virtually conceded that R. L. Davis duly executed a will, but it could not be located after his death. While there is some conflict in the proof as to the contents of the will, the proof shows overwhelmingly that its language was substantially as contended by the appellee. Each of the children by Davis' former marriage was given $5, while the second wife and the two infant

children were given the remainder of the property jointly. The wife was named as executrix.

A more careful examination of the evidence must be had to determine whether it meets the fourth test heretofore mentioned, namely, the continued recognition of the will by the testator, or other acts on his part showing its non-revocation. The appellee's proof shows that after she and her husband left the office of L. D. Bruce, who drafted the will on October 6, 1942, Mr. Davis took the will to the bank and placed it in his lockbox, where it remained until April 10, 1943, when he took it to his home and gave it to Mrs. Davis, who placed it in a small unlocked safety deposit box, which she kept in a chest of drawers containing her personal belongings and those of her young daughter. When asked whether Mr. Davis had the will in his possession again, Mrs. Davis said:

"A. I believe on April 21st. Mr. Davis and I read the will again, he had bought some stamps or he had sent to get some victory stamps and I got the book out of the box and set the box down on the table there and Mr. Davis sat at one end of the table and he took the will out of the box and read it and gave it to me and I read the will and put it back in the box.

"Q. 39. After that time did Mr. Davis have it again? A. Not to my knowing Mr. Davis never had the will."

Mrs. Davis said also that she had possession of the will after April 21st, but after the death of her husband she was unable to locate it, though she made a thorough search of the house and the outside premises.

Ill feeling existed between Mrs. Davis and the children by a former marriage, but they resided in West Virginia, and there is nothing in the record to indicate that anyone may have entered the Davis premises and destroyed the will. Soon after Mr. Davis' death Mrs. Davis had Mr. Bruce prepare the necessary papers for her qualification as administratrix of her husband's estate. She abandoned that plan, however, and proceeded to establish the contents of the lost will. The appellants sought to show that Mrs. Davis said she was displeased with one provision of the will because it would not permit the sale of property until the youngest child became of age, but this she denied. They sought to show also that Mr. Davis was rummaging through the house the night of his death, but Mrs. Davis denied this and placed

the time a few days prior to his death when she said he was looking for his checkbook prior to their making a trip to West Virginia. In Mrs. Davis' behalf there is proof that their marital relations were happy, Mr. Bruce testifying that Mr. Davis said he desired to make provision for his wife and infant children, and that what property he had accumulated was the result of the joint efforts of himself and his wife. The home property was owned jointly and a bank account was maintained jointly with a survivorship provision. War bonds in the amount of some $1,600.00 were purchased for the children by Mr. Davis.

We have noted that Mrs. Davis said she maintained custody of the will, but, according to her own testimony, it was kept in the Davis home in an unlocked box, so we fail to see how it could be said to be in her possession any more than that of Mr. Davis. He had access to it at all times, and it is well settled that the failure to find a will last seen in the control of the testator raises a presumption that it was destroyed by him for the purpose of revoking it. Ferguson v. Billups, 244 Ky. 85, 50 S. W. 2d 35. Has Mrs. Davis brought forth clear and convincing proof to overcome this presumption? We think not. There is no proof as to what transpired between April 21st, the date when Mr. and Mrs. Davis last read the will, and the date of his death the following June 14th. There is no proof showing statements or acts of Mr. Davis immediately before his death indicating that he still recognized the will. That he was rummaging through the house shortly before his death is beyond dispute. We believe it would be a dangerous precedent to hold that proof such as Mrs. Davis brought forth to show the non-revocation of the will meets the test of clear and convincing proof.

Wherefore, the judgment is reversed, with directions to set it aside and for proceedings consistent with this opinion.