**Blanche Lee THOMAS and Warren William Starns, Co-Administrators of the Estate of Lee Elizabeth Moreland, Deceased, and Co-Administrators With the Will Annexed of the Estate of Asa T. Moreland, Deceased, Plaintiff-Appellant,**

v.

**Lawrence JOHNSTON, Mary Anna Moore, Betty Jean Cannon and Doris Arnold, Defendants-Appellees.**

**No. 18215.**

United States Court of Appeals Sixth Circuit.

June 4, 1969.

McCree, Circuit Judge, dissented.

F. Selby Hurst, Lexington, Ky., for appellant, Ewing O. Cossaboom, Dickerson, Ahrens, Cossaboom & Burns, Cincinnati, Ohio, Hurst & Burnett, Lexington, Ky., on brief.

C. R. Beirne, Cincinnati, Ohio, for appellees, Beirne, Wirthlin & Manley, Cincinnati, Ohio, John R. Moser, Bruewer, Moser & Masana, Hamilton, Ohio, Frank H. Harvey, Jr., Brouse, McDowell, May, Bierce & Wortman, Akron, Ohio, on brief.

Before EDWARDS, CELEBREZZE and McCREE, Circuit Judges.

EDWARDS, Circuit Judge.

This is a diversity case tried to a federal District Judge without a jury. Plaintiff-appellant[1] sought to recover one-half of the assets of the estate of her deceased husband which she (as administratrix) had probated, distributed and closed. Appellant claimed before the District Judge and now argues before us that all of her actions as administratrix were taken under a mistake of fact, namely, a belief that her husband had died intestate.

Some years before his death decedent, who had been an executive of Sears, Roebuck and Company, had given his wife a substantial block of Sears, Roebuck stock. During their marital life appellant had had substantial income sources of her own and she testified at trial that as of the time of her husband's death, her estate considerably exceeded his.[2]

Appellant's husband had made a will which left his estate valued at a little over $100,000 to his wife and token amounts to defendant Johnston, his half-brother, and to a half-sister who died before decedent. Shortly before decedent's death, intending to make a minor change in the will, and with the knowledge of his wife, he removed the will from the safe deposit box where it normally had been kept. Subsequent to his death appellant undertook a search for the will and testified at trial that she had been unable to find it. She did have an unsigned copy of the will, but she made no offer to tender it for probate. On the contrary, four days after the funeral, she applied for appointment as administratrix of her husband's estate, averring in her petition that he had died intestate.

The estate was probated in the County Court for Fayette County, Kentucky, and appellant, as administratrix, distributed 492 shares of Sears, Roebuck stock representing one-half of the estate to appellees, as required by the Kentucky law of intestacy. See Ky.Rev.Stat. §§ 391.030, 391.010, 391.040, 392.020 (1962). Distribution of the assets was made in March of 1964, promptly after the time for filing of claims had expired under Kentucky law. See Ky.Rev.Stat. § 424.340 (1962).

Appellant was represented by competent Kentucky counsel who had actually

---

1. Appellant died while this appeal was pending, and her co-administrators have been substituted in her place.

2. The record indicates that Mrs. Moreland's assets exceeded $300,000.

been chosen by decedent and recommended by him to his wife. The lawyer in question advised appellant, according to her testimony, to probate the estate as she did on the basis of the facts she had supplied him, and advised, or was available for advice, all the way through the state proceeding to and including the distribution of the assets. Because of illness, he was not available to testify at the trial.

At trial of this case several of the defendants testified that appellant had told them prior to distribution that they could have the property which came to them under the laws of intestacy of the state of Kentucky even if she later found the will. Appellant denied these statements.

Appellant testified that she found the original will on September 14, 1964, over a year after the death of her husband, in a box under a bed in a spare bedroom. Thereafter her attorney wrote the appellees telling them of the discovery of the will, but not making any demand for return of the property, simply asserting that plaintiff had the matter under advisement. Subsequently, on February 2, 1965, after several of the appellees had expended portions of the assets received by them, this suit was filed seeking return of these assets on the ground that they had been distributed under mistake of fact. It was filed in the United States District Court for the Southern District of Ohio where appellees resided.

Appellees are a half-brother of the deceased and three children of the now deceased half-sister. It appears from the testimony that none of them had been very close to decedent in his lifetime, but it is conceded that they are heirs at law.

Appellant pins her case upon the equitable right to recover money paid under a mistake of fact.[3] She relies upon the familiar principle set forth in section 26 of the ALI Restatement of Restitution, which reads in part:

"(1) A person is entitled to restitution from another to whom gratuitously and induced thereto by a mistake of fact he has given money if the mistake * * * (b) was as to the identity of relationship to the donee or as to some other basic fact * * *.

* * * * * *

"(3) A person who has transferred money to another without intention to make a gift thereof may be entitled to restitution although at the time of transfer he manifested that the money was transferred as a gift."

See also Restatement of Restitution § 23 (1937).

The District Judge who decided this case did not, however, reject these principles of law. He simply held that appellant had not proved that she distributed the assets of the estate under mistake of fact.[4] He held that the proof of mistake must be "clear, satisfactory, and convincing," 30A C.J.S. Equity § 479c at 501 (1965); Robertson v. Jefferson County, 205 Ky. 479, 266 S.W. 27 (1924), and that "the plaintiff has not established by clear and convincing evidence that she was in fact mistaken at the time the distributions were made in March of 1964."

■ Kentucky allows recovery in cases involving unilateral mistake of fact or law where proofs of the mistake are "clear or palpable." Supreme Council Catholic Knights of America v. Fenwick, 169 Ky. 269, 183 S.W. 906 (1916); Rob-

---

3. We have examined the pleadings filed by the parties in this case and believe that appellees' answers must be read (as the District Judge read them) as fairly denying that the distribution of assets was made under "mistake of fact."

4. In dismissing the complaint the District Judge also relied upon his conclusions 1) that appellant had been negligent in her search for the missing will and that this negligence barred her recovery, and 2)

that she was likewise barred from recovery by the doctrine of estoppel. In this regard he pointed to the fact that three of the four appellees had sold the Sears, Roebuck stock and used the proceeds—principally for ordinary family expenditures. In view of the disposition we make of this case, we find no need to deal with the substantial legal problems which would be posed by affirmance or reversal on the basis of these holdings.

ertson v. Jefferson County, 205 Ky. 479, 266 S.W. 27 (1924); Bituminous Casualty Exchange v. Ford Elkhorn Coal Co., 243 Ky. 456, 48 S.W.2d 1057 (1932).

On appeal the critical question then becomes whether appellant proved that she distributed one-half of the assets of her husband's estate to appellees in March of 1964 under a "clear or palpable" mistake of fact or whether, as the trial judge concluded, it was pure conjecture as to whether she had acted mistakenly or had in fact distributed with full knowledge, but subsequently changed her mind.

Relevant to this conclusion are certain of the District Judge's findings of fact:

"The plaintiff did not in fact know of the location of the will in September of 1963.

\*   \*   \*   \*   \*   \*

"Mrs. Moreland was at all times from her husband's death on September 3, 1963, convinced that the signed will was in existence and that 'some day' she would find 'that will.'

\*   \*   \*   \*   \*   \*

"Any reasonably thorough search of the middle bedroom in September of 1963 would have led to the boxes under the bed in question and the discovery of the will. The search that was actually conducted was neither vigilant nor reasonably thorough under all of the circumstances. That area was included in the area which plaintiff searched.

\*   \*   \*   \*   \*   \*

"In March of 1964, and promptly after the time for filing claims against the Moreland Estate had expired under the laws of Kentucky applicable to creditors claims, the estate of Asa Moreland was distributed. One-half of the estate was distributed to Mrs. Moreland individually; the distributions to the defendants were as follows:

"To the defendant Johnston 246 shares of Sears, Roebuck stock and approximately $300.00.

"To each of the remaining three defendants 82 shares of Sears, Roe-

buck stock and approximately $181.-00.

These distributions were received on or about March 7th or 8th, 1964.

\*   \*   \*   \*   \*   \*

"The defendant Betty Jean Cannon and the defendant Mary Anna Moore, while on a trip to Winchester, Kentucky, in October of 1963, visited the plaintiff. At that time the plaintiff, in discussing the situation with the nieces, told them the approximate amount of distribution which could be expected, advised them of the details of the administration of the estate and, while expressing dissatisfaction with the matter, did indicate to the nieces that the property which was going to be distributed to them was 'their money, that they could go ahead and spend it, and that even if the will turned up, she would probably not do anything about it.' In August of 1964, the latter statement was in substance made to the defendant Lawrence Johnston and his wife while the plaintiff and Johnstons were on a two- or three-day trip together to Natural Bridge, Kentucky.

\*   \*   \*   \*   \*   \*

"Sometime prior to September, 1964, the plaintiff found the original will in its location above described. The plaintiff has not sustained the burden of proving by either clear or convincing evidence that the discovery did not ante-date March of 1964 (when the estate was distributed). A fact finding of the discovery before March, 1964, is as consistent with all of the evidence in this case as a fact finding of the discovery after that date. The plaintiff has not sustained the burden of showing by either clear or convincing evidence that she was acting under a mistake of fact when, in March 1964, the distributions were made to the defendants.

\*   \*   \*   \*   \*   \*

"The complaint in this case was filed on February 2, 1965. The prayer in the complaint is for the 'value of the assets of the estate distributed to such defendants, together with the value of

all income, including dividends   *   *.' The per share value of Sears, Roebuck common on February 2, 1965, was 128.-7.   *   *   *

          *    *    *    *    *    *

"The promptness in proceeding on an intestate administration and making distribution of her husband's estate at the earliest legally possible date were her own decisions in which none of the defendants participated.

"No effort was made by plaintiff, after her husband's death, to attempt to probate the unsigned copy of the last will which she had in her possession at all times.

"The defendants took no action, nor made any request or demand for either a prompt administration of Mr. Moreland's estate or the early distribution."

The District Judge who heard this equity action accepted appellant's testimony that she was unable to find the signed copy of her husband's will in September of 1963, the month of his death. But on two critical points he quite obviously did not believe appellant's testimony at trial. Appellant testified that she found the will on September 14, 1964. The trial judge found as a fact that she discovered it before September of 1964, and that she failed to prove by clear and convincing evidence that it had not been found prior to the distribution of the assets to the appellees in March of 1964.

Secondly, appellant denied that she had ever told appellees, or any of them, that they could have the property, and that even if the will was subsequently discovered, she wouldn't do anything about it. But in this regard the District Judge credited the contrary testimony of the appellees.

Indeed, it appears to this court that the trial judge related the filing of this action on February 2, 1965, to a change of mind on the part of appellant, possibly induced in part by an increase in the market price of Sears, Roebuck stock to $128 per share on that date.

One other factor appears to have been important (and perhaps decisive) in his

consideration of this case. He emphasizes in his opinion that there was no compulsion on appellant to make the distribution as promptly as she did. He credited completely appellant's statement that "I always knew that someday I would find that will." He cited the fact that she made no effort to probate the unsigned copy of her husband's will, although under Kentucky law this might have been successful. Caudill v. Loar, 293 Ky. 223, 168 S.W.2d 757 (1943); White v. Brennan's Adm'r, 307 Ky. 776, 212 S.W.2d 299, 3 A.L.R.2d 943 (1948); Cf. Davis v. Davis' Ex'x, 298 Ky. 310, 182 S.W.2d 885 (1944). He noted that under Kentucky law she might have been able to keep the estate open for twenty years. See Ky.Rev.Stat. § 395.010 (1962). He relied also upon the fact that appellees did nothing to induce or compel the distribution at the time it occurred.

We are not sure from the record available to us that had we been the finder of fact in this case, we would have decided the conflicts in evidence as did the District Judge. But the credibility of witnesses is entrusted to the judge who saw and heard them because this experience gives a much better opportunity to determine truth than does a cold record. See United States v. Oregon State Medical Society, 343 U.S. 326, 72 S.Ct. 690, 96 L.Ed. 978 (1952); Kirkhof Mfg. Corp. v. Sem-Torq, Inc., 312 F.2d 578 (6th Cir. 1963).

We cannot say that the findings of fact of the District Judge are "clearly erroneous," Fed.R.Civ.P. 52(a), or that the inferences he drew therefrom are impermissible ones.

The judgment of the District Court is affirmed.

McCREE, Circuit Judge (dissenting).

I respectfully dissent from the opinion of the court. I agree that the critical question is whether appellant established the existence of a "clear or palpable" mistake of fact that her husband had died intestate when she distributed one-half the assets of his estate in March, 1964. I am of the opinion, however, that there

is no evidence to contradict her assertion that such was her mistaken belief and that she did not discover the will until after distribution. In the absence of such contradictory evidence I think the trial judge's finding is unsupported and therefore clearly erroneous.

The District Judge found that she honestly believed her husband was intestate when she initiated the probate proceedings, but he did not accept her statement that she did not find the will until September, 1964. However, there was no direct testimony to contradict her sworn statement that she did not find the will until that time.

I believe it is improper to draw a discrediting inference from the fact that she distributed the assets at the "earliest legally possible date." Promptness in closing an estate is commendable, and some of the most telling criticism of the judicial system concerns protracted probate proceedings.

Furthermore, to impute to her knowledge of the existence of the will at the time she distributed the assets as though her husband died intestate, is not only to impute conduct contrary to her own interests, but also to impute the commission of the crime of concealing a will— a felony punishable by as much as five years imprisonment in Kentucky. Ky. Rev.Stat. § 434.280 (1962). Such imputation is particularly inappropriate since she was advised at all times by admittedly competent and ethical legal counsel.

Finally, I disagree with the inference drawn from her failure to attempt to probate her unsigned copy of the will. It is black letter law that a will which cannot be found on the death of a testator and was last seen in his possession is presumed to have been destroyed *animo revocandi*. Davis v. Davis Ex'x., 298 Ky. 310, 182 S.W.2d 885 (1944); Ferguson v. Billups, 244 Ky. 85, 50 S.W.2d 35 (1932). This is true despite the existence of a copy of this will in the possession of another person. 57 Am.Jur. Wills § 549 (1948).

In the absence of any evidence to contradict appellant's sworn testimony, I would hold that the District Judge's finding was clearly erroneous and I would reverse and remand with instructions to enter judgment for appellant.