

**FILED**
March 17, 2025 05:00 PM
ST-2022-RV-00001
**TAMARA CHARLES**
**CLERK OF THE COURT**

**IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS AND ST. JOHN**

| | |
|---|---|
| IN THE MATTER OF THE ESTATE OF ) | |
| ) | **CASE NO. ST-2022-RV-00001** |
| **GONZALO CALO CALO a/k/a** ) | **(Originating Case No. ST-2005-PB-00035)** |
| **GONZALO CALO,** ) | |
| ) | |
| ) | |
| Deceased. ) | |
| ) | |

2025 VI Super 8U

## MEMORANDUM OPINION & ORDER

### I.    INTRODUCTION

¶1    **THIS MATTER** is before the Superior Court on Petitioners', Judith C. Wheatley and Jacob P. Calo (herein referred to as the "appellants"), Petition for Review ("Petition"), filed on January 10, 2022.[1] The Petition requests this Court to review the judgments and orders entered on or about May 26, 2009, July 27, 2016, and December 3, 2021, in the case entitled *In The Matter Of The Estate Of Gonzalo Calo Calo a/k/a Gonzalo Calo*, ST-2005-PB-00035. For the following reasons, this Court affirms the judgments and orders entered for the probate matter.

### II.    FACTUAL AND PROCEDURAL BACKGROUND

¶2    On July 20, 2005, Judith Calo Wheatley (herein referred to as "Wheatley") filed a Petition for Administration in the Superior Court of the U.S. Virgin Islands.[2] The Petition was granted on August 9, 2005, and Letters of Administration were issued to Wheatley. Shortly after, on September 15, 2005, Herminia Soto (herein referred to as "Soto"), claiming to be the Decedent's daughter, filed a Petition for Probate of the Will and Issuance of Letters Testamentary. In the later Petition, Soto produced an "onion-skin" document entitled the "Last Will and Testament of Gonzalo Calo" dated August 17, 1971. Soto asserted that the document was a conformed copy of the Decedent's Will.

---

[1] Jacob P. Calo was a named heir of the Decedent's Estate for purposes of the probate case, but did not join Judith C. Wheatley as a Petitioner until the Petition for Review was filed.

[2] The initiating Petition for Administration for the probate matter was filed in the Family Division of the Superior Court of the Virgin Islands. In 2005, the Family Division of the Superior Court handled all probate matters. The Magistrate Division of the Superior Court was not formed until 2009.

¶3    On September 26, 2005, Wheatley objected to Soto's Petition for Probate of Will and For Issuance of Letters Testamentary. Accordingly, on May 22, 2006, the Court treated Wheatley's objection as a declaration of Will contest and held a hearing. In its Memorandum Opinion and Order dated May 26, 2009, the probate court found the onion skin document filed by Soto to be a conformed copy of the Decedent's original Last Will and Testament and admitted same to probate.

¶4    Following, the probate court's decision, Wheatley filed a Notice of Appeal to the Supreme Court of the Virgin Islands on June 23, 2009, which was dismissed by Order dated July 30, 2010, for Wheatley's failure to post the required bond or take any further action in the matter.

¶5    On March 29, 2011, Soto filed a "Petition for Revocation of Letters Testamentary to Previously Appointed Administratrix and for Issuance of Replacement Letters to Executrix Herminia Soto." During a citation hearing on July 11, 2011, Wheatley and Jacob Calo personally appeared and voiced objections to the appointment of Soto as Executrix. However, by Order dated January 5, 2016, the Magistrate Court granted Soto's Petition for Revocation and issued Letters Testamentary to Soto.

¶6    Prior to Letters Testamentary being issued to Soto, Wheatley filed a Motion to Determine Heirship of Soto on January 27, 2012, and in response, Soto filed an Opposition on February 29, 2012. Additionally, on February 10, 2012, Wheatley filed a Motion to Determine Status of Estate Assets, requesting the Court to assess whether 50% of the stock in Gonzalo Calo Enterprises, Inc. (herein referred to as "GCE") fell outside of the scope of the Decedent's Will and should instead be distributed by intestate succession. On March 19, 2012, Soto filed an Opposition, arguing that Gonzalo Calo Enterprises, Inc., was a successor corporation of Gonzalo Calo and Co., Inc., (herein referred to as "GCC") and that the latter company, identified and devised within the Decedent's Will, was not adeemed upon the Decedent's creation the GCE.

¶7    To address the above stated motions, the probate court issued a Memorandum Opinion, along with a Judgment and Order dated July 27, 2016, that denied Wheatley's Motion to Determine Heirship and declared Soto an heir of the Estate for purposes of the right to share in the intestate portion of asset distributions. Also on July 27, 2016, the Court issued a second Memorandum Opinion and Judgment and Order, that denied Wheatley's Motion to Determine Status of Estate Assets. In its Memorandum Opinion, the probate court held that the original company, GCC, did not change in substance when it dissolved and re-formed as the successor company, Gonzalo Calo Enterprises, Inc., and that the Decedent's bequest of a 50% interest in the same was not adeemed by the formation of Gonzalo Calo Enterprises, Inc.

¶8    On August 1, 2016, Wheatley, by and through counsel, filed a Petition for Review of the two Court Orders dated July 27, 2016. The probate court dismissed the Petition by Order dated November 27, 2018, on the grounds that it was premature as no final judgment or order had been entered. Additionally, on August 1, 2016, Wheatley filed a Motion to Stay in hopes of continuing

the probate until the Petition for Review was resolved. However, on August 12, 2016, the Magistrate denied Wheatley's Motion to Stay.

¶9     On December 3, 2021, the Magistrate issued Final Adjudication, thus closing the probate matter ST-2005-PB-00035. Subsequently, Wheatley and Jacob Calo, by and through counsel, filed the instant Petition for Review on January 10, 2022. On February 20, 2025, this Court held a hearing on this matter.

## III.     LEGAL STANDARD

¶10     V.I. Super. Ct. Rule 322 authorizes the Superior Court to review judgments and orders issued by Magistrate Judges. Specifically, V.I. Super. Ct. Rule 322 (a) provides the following:

> Final orders or judgments of the Magistrate Division resolving completely the merits of the cases which came before them pursuant to their original jurisdiction, as provided by Title 4 V.I.C. § 123(a), are immediately appealable to judges of the Superior Court of the Virgin Islands, as well as any interlocutory orders appealable by law.

V.I. Super. Ct. Rule 322 (a).

¶11     Moreover, title 4 V.I.C. §123 (c) states that "[a] judge of the Superior Court may reconsider any pretrial matter handled by the magistrate judge where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." 4 V.I.C. §125 sets forth that "[a]ll appeals from the Magistrate Division, except as otherwise provided for in this chapter, must be filed in the Superior Court or to the Supreme Court, if appealable to the Supreme Court as provided by law."

¶12     Importantly, the "petitioner bears the burden of persuasion to affirmatively demonstrate nonconformity with statutory requirements (as would invalidate an assessment)."[3] In *Payne v. Lehtonen*, the Court explained that the Superior Court judge is required to apply a mixed standard of review when reviewing appealable orders from the Magistrate Division. "Thus, a Magistrate's findings of facts may be reversed only if they are clearly erroneous while the Magistrate's conclusions of law are afforded a plenary review."[4] The Superior Court's review is "not limited to jurisdictional issues but extends to whether the functions were exercised erroneously."[5] Findings of fact are considered "clearly erroneous where they are completely devoid of minimum

---

[3] *See Tutu Park Ltd. v. V.I. Board of Tax Review*, 38 V.I. 119 (V.I. Super. Ct. 1998).

[4] *Payne v. Lehtonen*, 55 V.I. 286, 289 (V.I. Super. Ct. 2011), aff'd, 57 V.I. 308 (2012).

[5] *Baumann v. Pub. Emps. Rels. Bd.*, 68 V.I. 304 (Super. Ct. 2018).

evidentiary support or bear no rational relationship to the supportive evidentiary data."[6] Moreover, "plenary review means applying the same legal standard as the trial court to the same record."[7] The Court notes that the petitioner "bears the burden of persuasion to affirmatively demonstrate nonconformity with statutory requirements."[8]

## IV.   ANALYSIS

¶13   The appellants seek review of four orders: 1) Memorandum Opinion and Order issued on May 26, 2009; 2) Memorandum Opinion and Judgment and Order issued on July 27, 2016; 3) another Memorandum Opinion and Judgment and Order issued on July 27, 2016; and 4) the Final Adjudication and Decree entered December 3, 2021.

¶14   As mentioned above, V.I. Super. Ct. Rule 322 governs appeals in original jurisdiction cases. Specifically, V.I. Super. Ct. Rule 322 subsection (2) sets forth the required contents of a notice of appeal:

> The notice of appeal shall identify the party initiating the appeal, designate the decision or order appealed from, and contain a concise position statement of no more than 780 words in length (or three pages for self-represented parties) which sets forth the issues the party wishes to present for appeal, together with a brief argument in support of the parties' position.

¶15   The appellants filed their Petition for Review on January 10, 2022. However, the Petition contents do not fully comply with the requirements outlined in subsection 2 of Rule 322. Instead, the Petition poses eleven questions to this Court and requests "this Court to review the judgments and orders entered by the Magistrate Court..."[9] The Petition also lacks "a brief argument in support" of the appellants' position. Nevertheless, this Court will review the Orders and Judgments from the Magistrate Court dated May 26, 2009, July 27, 2016, and December 3, 2021, on the merits.[10]

---

[6] *Cascen v. People of the Virgin Islands*, 60 V.I. 392, 417, (V.I. 2014).

[7] *Henry v. Dennery*, 55 V.I. 986, 991 (V.I. 2011).

[8] *V.I. Coal. of Citizens with Disabilities, Inc. v. Gov't of Virgin Islands*, 47 V.I. 315, 321 (V.I. Super. Ct. 2005).

[9] Petition for Review at 1.

[10] *In re Order Amending the Rules Governing Rev. of Magistrate Decisions*, 2010 V.I. 105, at * 10 (V.I. Super. Ct. 2010) (explaining that 'no petition for review shall be dismissed merely because of its form, title or informality').

### 1. This Court affirms the Judgment and Order dated May 26, 2009, admitting a conformed copy of the Last Will and Testament of the Decedent.

¶16    The first issue under review is whether the court[11] erred when it Ordered that the Last Will and Testament of Gonzalo Calo, executed on August 17, 1971, was valid and admitted the "conformed copy" to probate. This Court finds that there is sufficient factual and legal justification in the ruling to admit a conformed copy of the Last Will and Testament of Gonzalo Calo.

¶17    A hearing was held on May 22, 2006, to determine the validity of the document being introduced as a copy of the Decedent's Will. After considering sworn testimony at the hearing, the probate court deemed the Last Will and Testament of Gonzalo Calo, executed on August 17, 1971, valid. As such, the "conformed copy" of the Will was admitted to probate. In the May 26, 2009, Memorandum Opinion, two issues were addressed: 1) "whether the original Will was in Calo's custody or in the custody of a third party at the time of Calo's death," creating the presumption of revocation, and 2) whether the conformed copy of Calo's Will "substantially complies with the execution requirements of acknowledgment and attestation set forth in section 13 of title 15 of the Virgin Islands Code such that it can be admitted to probate."[12]

¶18    In its analysis, the probate court first considered whether the original Will was in the Decedent's custody at the time of his death or if it was being held by a third-party, such that the presumption of revocation arises. The Memorandum Opinion explained that "if the original Will was in Calo's custody at the time of his death, then the presumption of revocation arises."[13] Further, the probate court relied on *Duvergee v. Sprauve*, to clarify that:

> [I]f a will or codicil known to have been in existence during the testator's lifetime and in his custody, or in a place where he had ready access to it, cannot be found at his death a presumption arises that the Will was destroyed by the testator in his lifetime with the intention of revoking it, and in the absence of rebutting evidence, this presumption is sufficient to justify a finding that the will was revoked.[14]

¶19    In the probate matter, the original Will was determined to have been lost in an attorney's safety deposit box at Chase Manhattan Bank at the World Trade Center during the September 11, 2001, terrorist attack. The Memorandum Opinion discussed whether there was any evidence presented of the possibility that the Will was destroyed or intended to be revoked by the Decedent. During an evidentiary hearing, it was determined that "where the court finds no proof tracing the

---

[11] The Magistrate Division of the Superior Court of the Virgin Islands, as it exists today, was formed in 2009, pursuant to 4 V.I.C. § 123 and it has original jurisdiction in probate matters. When Judge Thomas issued the Memorandum Opinion and Order on May 26, 2009, probate matters were handled in the Family Division of the Superior Court.

[12] Memorandum Opinion dated May 26, 2009, at p. 5.

[13] Memorandum Opinion dated May 26, 2009, at p. 5.

[14] *Duvergee v. Sprauve*, 413 F. 2d. 120 (3d Cir. 1969).

Will back into the hands of a testator, no presumption of revocation arises[;]"[15] and ultimately found that "in the absence of proof to the contrary, this court can reasonably infer that Calo's Will remained in the custody of De Vos & Co. and, as such, was destroyed in the World Trade Center."[16]

¶20     Thereafter, the probate court proceeded to analyze whether the Will was destroyed, lost, and the legal standards for admitting a carbon copy of the original Will. During the analysis, it was determined that "the proponent of a lost Will must prove the contents of that Will;"[17] and may do so by "presenting a copy of the Will." [18] The probate court ultimately concluded that the "conformed copy in the case at bar is admissible to prove the contents of Calo's original Will."[19] This Court agrees.

¶21     After establishing that the Decedent's Will was destroyed in the World Trade Center in 2001 and that there was no revocation, the probate court directed Soto to "proceed as if proving a lost will."[20] To admit the "onion skin copy," the original Last Will and Testament must have been executed in accordance with title 15 V.I.C. § 13. Specifically, a Will must be executed and attested in the following manner:

> (1) It shall be subscribed by the testator at the end of the will.
> (2) Such subscription shall be made by the testator in the presence of each of the attesting witnesses, or shall be acknowledged by him, to have been so made, to each of the attesting witnesses.
> (3) The testator, at the time of making such subscription or at the time of acknowledging the same, shall declare the instrument so subscribed to be his last will and testament.
> (4) There shall be at least two attesting witnesses, each of whom shall sign his name as a witness, at the end of the will, at the request of the testator.

15 V.I.C. § 13.

¶22     The probate court explained that it admitted the Will, in part, because the conformed copy bears the typewritten names of Calo and three attesting witnesses, such that it can be reasonably inferred that the Decedent and the witnesses signed their names at the end of this original will.[21] The Memorandum Opinion issued on May 26, 2009, also stated that the Will was last known to be in the possession of the law firm Bailey, Wood & Rosenberg (herein "BWR"), later succeeded by the firm De Vos & Co., which placed the Will in the Chase Manhattan safe deposit box. The

---

[15] Id.

[16] Memorandum Opinion dated May 26, 2009, at p. 7.

[17] *Referencing White v. Brennan* Adm'r., 212 S. W.2d 299, 300 (Ky. App. 1948).

[18] *Referencing In re Estate of Eustace, 45 V.I. 287, 289 (V.I. Super. Ct. 2003).*

[19] Memorandum Opinion dated May 26, 2009, at p. 7.

[20] Id.

[21] Memorandum Opinion dated May 26, 2009, at p. 8.

Opinion further cited testimony that "[a]ccording to Mary Shrallow, who was a secretary at [BWR law firm] in 1971, it was common practice to have the attorney responsible for drafting Wills as well as two secretaries at the firm meet with the testator to ascertain his understanding of the contents"[22] as they were being signed. The probate court relied on the testimony of Ms. Shrallow as a witness on the record to determine that the conformed copy in this case would have been executed in accordance with the aforementioned procedures.[23] Accordingly, the conformed copy of the Will evidenced that the original Will was validly executed in accordance with title 15 V.I.C. § 13.

¶23    This Court has the authority to reverse a lower court's findings of facts only if they are clearly erroneous. However, the Judgment and Order and Memorandum Opinion issued on May 26, 2009, provides sufficient factual justifications for its decision to admit a conformed copy of the Last Will and Testament of the Decedent. Accordingly, this Court finds that the evidence in the record supports the conclusion that the Will was lost, not revoked, and that Wheatley presented insufficient evidence for the probate court to conclude that the Decedent ever regained possession of his original Will or intended for it to be revoked.

¶24    After a thorough review of the record, this Court finds sufficient legal and factual analysis to support the decision to admit a conforming copy of the Last Will and Testament of Gonzalo Calo, executed on August 17, 1971.

## 2. This Court affirms the Judgment and Order, dated July 27, 2016, which establishes Soto's heirship for probate purposes.

¶25    The Magistrate issued a Judgment and Order along with a Memorandum Opinion on July 27, 2016, which directed five rulings for the probate case ST-2005-PB-00035. First, the Magistrate found that "Herminia Soto's Opposition to Judith C. Wheatley's Motion to Determine Heirship will be interpreted as a Motion for Summary Judgment and will be granted." Second, the Magistrate acknowledged Soto as the Decedent's daughter to "satisfy the written acknowledgement requirements under V.I. Code ann. Tit. 15, Section 84(13)." Third, the Magistrate ruled that Soto "is an heir for purposes of her right to share in her father's intestate estate." Fourth, the Judgment and Order denied Wheatley's Motion to Determine Heirship. Finally, the Magistrate denied "Judith C. Wheatley's request for an order to compel Herminia Soto to submit to a DNA siblingship test." Consequently, the appellants requested this Court to review whether the Magistrate erred when it issued the above-stated judgments and orders.

---

[22] Id. at 2.
[23] *See* Shrallow Aff. Paragraph 6.

### a. Soto's Birth Certificate does not negate the Decedent's acknowledgement of parentage of Soto for purposes of inheritance.

¶26   The appellants' Petition for Review poses whether the Magistrate erred "when denying Petitioner's Motion to determine heirship upon the production of Respondent's certified birth certificate establishing that Respondent is not the biological child of Gonzalo Calo?"[24] During oral arguments at the hearing on February 20, 2025, counsel for the appellant reinforced his argument that the Magistrate should have been required to accord the paternity of Soto based on her Puerto Rican birth certificate pursuant to the Full Faith and Credit Clause of the United States Constitution. The appellants contend that Soto's Puerto Rican Birth Certificate lists Cruz Garcia as the father, rather than the Decedent.

¶27   The Magistrate explained that while "the full faith and credit clause commands a state to respect a sister state's final judgments entered by a competent court having jurisdiction over its subject matter and parties, it is much less demanding when it comes to choice of law or a sister state's legislative acts over which the other state has the right to legislate."[25] The probate court explained that it "does not have to blindly accept Soto's Puerto Rican Birth Certificate, ostensibly enacted under its own laws, in contravention of the laws of this territory and public policy favoring legitimacy."[26] This Court agrees.

¶28   Using the required standing of plenary review, this Court finds that the Magistrate's reasoning in the July 27, 2016, ruling, is "not devoid of minimum evidentiary support."[27] It is without question that the Full Faith and Credit Clause of the United States Constitution applies in the U.S. Virgin Islands through the 1954 Revised Organic Act as Amended, Section 3. The Full Faith and Credit Clause of the U.S. Constitution requires that judgments rendered by courts in one state be recognized and enforced by courts in other states, provided that the original court had proper jurisdiction and followed due process. This principle extends to birth certificates under certain conditions.

¶29   The Magistrate relied in part on the rules set forth in *Franchise Tax Bd. of California v. Hyatt* and C.C. Marvel's annotation on conflict of laws. In pertinent part, *Franchise Tax Bd. of California v. Hyatt* held that "a State need not 'substitute the statutes of other states for its own statutes dealing with a subject matter concerning which it is competent to legislate.'"[28] Moreover,

---

[24] Petition for Review at 2.
[25] Memorandum Opinion dated July 27, 2016, at p. 9.
[26] Id.
[27] *See Cascen v. People of the Virgin Islands*, 60 V.I. 392, 417, (V.I. 2014).
[28] *Franchise Tax Bd. of California v. Hyatt*, 538 U.S. 488, 497(2003) (quoting *Pacific Employers Ins. Co. v. Industrial Accident Comm'n, supra*, at 501, 59 S.Ct. 629).

in American Law Reports, C.C. Marvel states that "the question (of recognition of a foreign status) is one of comity and not of constitutional law under the full faith and credit provision; and the courts of one state are not required by the full faith and credit clause of the Federal Constitution to give effect to the statute of another state legitimizing children born prior to the marriage of their parents."[29]

¶30    The Magistrate exemplified this jurisdiction's public policy interest in favoring legitimacy by providing a statutory scheme. The probate court cited to title 16 V.I.C. § 292(a)(6), 16 V.I.C. § 370, and 19 V.I.C. § 832 to show the territory's laws requiring "a voluntarily executed notarized affidavit of paternity" to be in accord with the Full Faith and Credit Clause when dealing with paternity in different circumstances. Because there was "no such acknowledgment attached to her [Puerto Rican] birth certificate and none was otherwise submitted by the parties," the Magistrate held that "Soto's Puerto Rican Birth Certificate [(naming Garcia as the father)] may have been entitled to some respect had it been accompanied with a sworn acknowledgment of paternity by Cruz Garcia"[30] in accordance with the laws of the U.S. Virgin Islands.

¶31    This Court finds that the Memorandum Opinion issued on July 27, 2016, provided sufficient legal justification in its application of the Full Faith and Credit Clause of the U.S. Constitution in considering the contents of Soto's Puerto Rican Birth Certificate for purposes of probate. The Magistrate explained the territory's dominant interest in legitimizing persons born out of wedlock, sufficiently explains its application of the Full Faith and Credit Clause, conflict of laws provisions, and Virgin Islands statutory authority. Whether Calo provided written or public acknowledgment that Soto was his daughter for purposes of probating the intestate portion of his estate is unaffected by the factual conclusion that Garcia is named on Soto's birth certificate in Puerto Rico. Accordingly, this Court will not reverse the Magistrate's decision.

### b. The Magistrate did not err in establishing paternity by written acknowledgment pursuant to 15 V.I.C. § 84(13) for purposes of intestate succession.

¶32    The appellants contend that the Magistrate erred in finding that Gonzalo Calo is the biological father of the Respondent for purposes of intestate inheritance. However, there is no evidence in the record that any of the probate court's rulings, judgments, memoranda, and orders issued throughout the probate proceeding determined the biological parentage of Soto. In fact, the Magistrate does the opposite. The Memorandum Opinion issued July 27, 2016, states that the

---

[29] C.C. Marvel, Annotation, *Conflict of Laws as to Legitimization or as to Rights of Illegitimates, as Affecting Descent and Distribution of Decedent's Estates*, 87 A.L.R.2d 1274 *2b.
[30] Memorandum Opinion dated July 27, 2016, at p. 9.

probate court cannot decide the biological relationship between Soto and the Decedent and that it has no authority to require Soto to participate in sibling DNA testing.

¶33    The Magistrate found that biological parentage is not the determining factor for intestate inheritance; rather, concluded that written public acknowledgment of paternity under title 15 V.I.C. § 84(13) is sufficient to legitimize Soto as an heir for purposes of intestate succession. Therefore, the main issue before this Court is whether the court erred in determining heirship of Soto in conformity with the requirements of title 15 V.I.C. § 84(13).

¶34    Title 15 V.I.C. § 84 governs descent and distribution of estate assets. Specifically, subsection 13 addresses descent and distribution of estate assets to illegitimate children and states the following:

> An illegitimate child shall be considered to have the same status, for the purpose of the descent and distribution of the property of his or her ancestors, as if he or she were born in lawful wedlock provided that in cases where the ancestor in question is a father, he admitted of record paternity of such child by signing the official birth certificate; or he was adjudged the father of such child by a court of competent jurisdiction; or by written acknowledgment he recognized such child as his.

15 V.I.C. § 84(13).

¶35    In the Virgin Islands, there are four ways by which an illegitimate child can be legitimized to satisfy the requirements of § 84(13):

- o   by public acknowledgment of the child by the father (16 V.I.C. § 462 (1964))
- o    by the father signing a notarized affidavit acknowledging paternity (19 V.I.C. § 832 (1976))
- o    by a court order establishing paternity upon the petition of the mother or the father (16 V.I.C. §§ 291, 303 (1964 & Supp 1995))
- o    or by the marriage of the parents (16 V.I.C. § 461 (1964))

*See In re Baby Girl Lake* 33 V.I. 66, 70- 71 (Terr. Ct .1995).[31]

¶36    The Magistrate sufficiently evaluated all four factors in establishing Soto's right to share in her father's intestate estate. Ultimately, the Magistrate ruled that "[t]he two written acknowledgements of paternity are Decedent's 1966 affidavit that he is Soto's father and the reference in his 1971 Will that Soto is his daughter."[32] This Court agrees that it is "clear that paternity by written acknowledgment for intestate succession purposes can be established

---

[31] *Citing Tyler v. Armstrong,* 365 F. 3d. 204, 210 (3d. Cir. 2004).
[32] Memorandum Opinion dated July 27, 2016, at p. 13.

independently under § 84(13), without resort to the other legitimization and paternity statutes under V.I. law."[33]

¶37    During oral arguments on February 20, 2025, appellants' counsel set forth that the definition of "child" under § 84(13), should not apply to adults. However, in its July 27, 2016, decision, the Magistrate explained that "certainly an adult is as interested as is a minor in transmutation of status from illegitimacy to legitimacy and perceive[s] no compelling reason why the policy of the state favoring legitimization of children should be cut off upon their attaining majority."[34] Continuing, Magistrate stated that "statutes must be construed liberally in favor of legitimacy"[35] and "as previously stated, there is no public policy reason why these statutes cannot apply equally to an adult seeking legitimization."[36] This reasoning is sufficiently tailored to the statute's requirements for legitimization for purposes of intestate succession.

¶38    This Court agrees with the Magistrate's conclusion that the two written acknowledgements by the Decedent satisfy the requirements of § 84(13) to legitimize Soto for her to share in the Decedent's Estate by intestate succession. Accordingly, this Court will not reverse the probate court on these grounds.

        **c.  The Magistrate committed harmless error in *sua sponte* converting an opposition motion without providing notice. However, this Court affirms the Judgment and Order establishing Soto's heirship for purposes of intestate inheritance.**

¶39    Appellants' Petition for Review contends that the Magistrate erred interpreting an opposition pleading as a Motion for Summary Judgment to determine heirship. Accordingly, the issues before this Court are whether the Magistrate erred in *sua sponte* converting an opposition pleading and ruling on summary judgment and whether that legal error is harmless or is grounds for reversal.

¶40    While the Superior Court may take certain procedural actions *sua sponte*, it must first provide notice and a chance for the parties to respond before entering a dispositive order.[37] This rule is reinforced in *United Corp. v. Tutu Park, Ltd.*, where the Supreme Court of the Virgin Islands found that "the Superior Court erred in reaching [an] issue *sua sponte* ... without—at an absolute minimum—providing [the opposing party] with an opportunity to be heard with respect to any

---

[33] Id.
[34] Id. at 11. (*referencing In re Legitimation of Lillian Mathilda Williams*, 16 V.I.C. § 462 (repealed 1998)).
[35] Id. at 13. (*quoting Creque*, 4 V.I. at 573.).
[36] Id.
[37] *See In re Reynolds*, 60 V.I. 330, 336 (V.I. 2013) (*referencing Brunn v. Dowdye*, 59 V.I. 899, 905 (V.I. 2013))

grounds for summary judgment being raised by the Superior Court *sua sponte*."[38] When the Magistrate *sua sponte* converted an opposition pleading into a motion for summary judgment, and issued a ruling without providing notice in the July 27, 2016, Memorandum Opinion, error was committed by depriving Wheatley of her right to be heard.[39]

¶41    Nevertheless, this Court may still affirm the Magistrate's "order in granting summary judgment if its error in converting the motion without notice was ultimately harmless."[40] As held in *Brunn* and *Mendez*, the Supreme Court of the Virgin Islands found that "the denial of the right to be heard in a civil case is subject to harmless error review."[41] Pursuant to V.I. S. Ct. R. (4)(i) for appellate procedure, "harmless error" is defined as "[n]o error or defect in any ruling or order or in anything done or omitted by the ...Court by any of the parties is grounds for granting relief or reversal on appeal where its probable impact, in light of all of the evidence in the case, is sufficiently minor so as not to affect the substantial rights of the parties."[42] The Court must look at the entire record and determine the probable effect of the error in light of the evidence.[43] Moreover, the appellate level court must be well-satisfied that the error did not prejudice a party, but it need not disprove every reasonable possibility of prejudice.[44]

¶42    Wheatley originally filed a Motion to determine the heirship of Soto on January 27, 2012. Soto filed an opposition on February 29, 2012. Subsequently, Wheatley initially filed a reply to Soto's opposition to determine heirship on April 11, 2012, and later filed two supplemental briefs on March 29, 2016, and June 13, 2016. Soto then filed a supplemental opposition on May 31, 2016. Wheatley filed a Reply to Soto's Supplemental Opposition on June 13, 2016.

¶43    Soto has a right to share in her father's intestate estate as a matter of law because written public acknowledgment of paternity has been established under 15 V.I.C. § 84(13). [45] As Soto reiterated in oral argument, it should have been no surprise to the appellants that the Magistrate considered Soto's request to rule as a matter of law. Although the Magistrate erred in *sua sponte*

---

[38] *United Corp. v. Tutu Park, Ltd.,* 55 V.I. 702, 711 (V.I. 2011); See also *Cool Fuel, Inc. v. Connett,* 685 F .2d 309, 311–12 (9th Cir.1982) (holding that court may *sua sponte* enter summary judgment against the party who moved for summary judgment, but only if that party has had a fair opportunity to dispute that issue); And See *Hispanics for Fair and Equitable Reapportionment v. Griffin,* 958 F.2d 24, 25 (2d Cir.1992)) (explaining that "[s]ummary judgment should not be granted ... unless the losing party has been given an opportunity to demonstrate that there are genuine material issues for trial.").

[39] See *Brunn v. Dowdye,* 59 V.I. 899, 905 (2013) (referencing *Mendez v. Gov't of the V.I.,* 56 V.I. 194, 205 (V.I.2012)).

[40] *United Corp. v. Hamed,* 64 V.I. 297, 306–07 (2016) (referencing *Machado,* 61 V.I. at 392 (conducting harmless-error review where the Superior Court committed legal error in granting summary judgment).

[41] *Brunn,* 59 V.I. at 905.

[42] V.I.S.CT.R. 4(i).

[43] See *Bridges v. Wilson,* 996 F.3d 1094 (2021).

[44] *General Motors Corp. v. New A.C. Chevrolet, Inc.,* 263 F.3d 296 (2001).

[45] See e.g. *Brunn v. Dowdye,* 59 V.I. 899, 905 (2013).

converting the motion, the same result transpired as if the Magistrate denied Wheatley's original motion, thus establishing the heirship of Soto for purposes of probating the Decedent's Estate.

¶44    Virgin Islands Rule of Civil Procedure 56 governs summary judgment. It allows a party to move for summary judgment by "identifying each claim or defense---or the part of each claim or defense-on which summary judgment is sought."[46] The Court may grant summary judgment if the moving party demonstrates that there is no genuine issue of any material fact and that it is entitled to judgment as a matter of law.[47]

¶45    The Magistrate did not rule on facts that were disputed. In Section II of the Memorandum Opinion, the Magistrate clearly identified which facts were "undisputed facts or unrefuted ones" and "disputed facts"[48] and limited the judgment to the matters with undisputed facts. For example, the Magistrate explained that the probate court "cannot find that the Decedent publicly acknowledge Soto…for summary judgment purposes because it is a disputed issue of fact." [49] Given the Magistrate Court's discretion in only adjudicating undisputed facts as a matter of law in its Memorandum Opinion and Order, its error in converting the opposition pleading is minimal. This Court finds it does not "affect the substantial rights of the parties."[50]

¶46    Although not pertinent in determining whether there was harmless error in granting summary judgment, this Court would like to note that the appellants failed to exercise all available avenues prior to filing this Petition for Review, upon the issuance of the Magistrate's Memorandum Opinion currently being challenged. The appellants could have filed additional responses, supplemental replies, a motion for reconsideration, or sought interlocutory appeal. However, after a thorough review of the five submissions Wheatley filed, there is no mention of new facts introduced to oppose Soto's heirship argument. For the reasons previously mentioned above, the Magistrate did not err in legitimizing Soto's heirship pursuant to title 15 V.I.C. § 84(13).

¶47    Given that the Magistrate did not rule on any disputed facts in the judgment issued July 27, 2016, and that the outcome of the ruling was essentially the same result as if the court had not *sua sponte* converted the motion, in combination with the correct analysis of heirship as a matter of law pursuant to title 15 V.I.C. § 84(13), this Court finds that the legal error of converting the opposition motion was ultimately harmless. Therefore, this Court affirms the Judgment and Order establishing Soto's heirship for purposes of intestate inheritance.

---

[46] V.I. R. Civ. P. 56(a).
[47] Id.
[48] See Memorandum Opinion dated July 27, 2016 at p. 3-5.
[49] Id. at p. 13.
[50] V.I.S.CT.R. 4(i).

### 3. This Court affirms the additional Judgment and Order entered July 27, 2016, concerning the Decedent's corporate assets.

¶48     The Magistrate issued an additional Judgment and Order, with an accompanying Memorandum Opinion on July 27, 2016, addressing four separate points of order. This Judgment and Order 1) denies Wheatley's Motion to Determine Status of Estate Assets; 2) grants the Executrix Soto's Opposition to Wheatley's Motion to Determine Status of Estate Assets, interpreting it as a Motion for Summary Judgment; 3) determines that the Decedent's bequest of 50% interest in "Gonzalo Calo and Co., Inc. ("GCC"), to Herminia Soto," in his Last Will and Testament, "was not adeemed by his subsequent creation of Gonzalo Calo Enterprise, Inc.("GCE"); and lastly, 4) the Judgment and Order decrees that the "Decedent's bequest of his 50% interest in Gonzalo Calo and Co., Inc. to Herminia Soto shall be satisfied from Gonzalo Calo Enterprises, Inc."

¶49     The question before this Court is whether the Magistrate committed reversible error in the Judgment and Order and Memorandum Opinion issued on July 27, 2016, concerning the Decedent's corporate assets.

### a. The Magistrate did not err in finding that the Decedent's bequest of a 50% interest in GCC was not adeemed by the corporate formation of GCE.

¶50     On March 21, 2005, Gonzalo Calo (the "Decedent") died testate.[51] As previously mentioned, the Magistrate admitted a copy of his Last Will and Testament, dated August 17, 1971, to probate on January 5, 2016.[52] Paragraph 13 of the Will provided in pertinent part that: "50% of the Decedent's interest in Gonzalo Calo & Co., Inc. was bequeathed to Herminia Calo Otero, with the remainder distributed equally among Carlos A. Calo, Carlos G. Calo, Maritza Calo, Grace Calo, and Jacob Calo."[53] The Will did not contain a residuary clause. At the time of the Decedent's death, GCC no longer existed as a corporate entity.[54]

¶51     GCC was formed on February 6, 1964, as a Virgin Islands corporation engaged in the wholesale grocery business. However, the Office of the Lieutenant Governor dissolved GCC on November 17, 1981, due to the non-payment of franchise taxes for 1980 and 1981.[55] Prior to GCC's dissolution, the Decedent had incorporated GCE on October 26, 1979.[56] GCE continued to operate from Veteran's Drive, Curacao Gardens, No. 9-10, St. Thomas, U.S. Virgin Islands, the same business address as GCC.[57]

---

[51] Memorandum Opinion dated July 27, 2016, at p. 3
[52] Id.
[53] Id.
[54] Id. at p. 5
[55] Id. at p. 10
[56] Id. at p. 3
[57] Id.

¶52   The business operations, management, and personnel of GCC and GCE remained largely the same.[58] Soto played a significant role in managing both corporations, handling their financial affairs and day-to-day operations.[59] The officers of GCC and GCE were substantially the same, with the exception that Soto's husband became GCE's new president, and Decedent's son, Carlos A. Calo, served as Vice President and a Board Member.[60] Additionally, Lord Conception, the business accountant, oversaw financial matters for both GCC and GCE for 35 years, until 2009.[61] Neither GCC nor GCE ever issued stock during their existence.[62]

¶53   Appellants' Petition for Review contends that the Magistrate erred in denying Wheatley's Motion to Determine Status of Estate Assets and determined that Gonzalo Calo Co., Inc. and Gonzalo Calo Enterprises, Inc. were two separate and distinct corporations from each other.[63] Wheatley argues that "because the two corporations were separately created, the Court must mechanically hold that Soto acquired no corporate interest in GCE, since Decedent made a bequest to her of a 50% interest in GCC."[64] During oral arguments on February 20, 2025, Soto's counsel accepts that GCC and GCE were two separate and distinct corporations. This Court also proffers the same: GCC and GCE are two separate entities. However, the issue on review is not whether GCC and GCE are separate entities. The Magistrate did not come to a legal conclusion as to whether GCC and GCE are two separate and distinct corporations. In fact, the Magistrate stated that the "guiding princip[le] in deciding whether the bequest of an interest in the old corporation was adeemed by the creation of a new one" is not determined by whether GCC and GCE are two separate and distinct entities.[65] Rather, the issue on review is whether the Magistrate erred when finding that the probate court "must look not as to [the] form [of the corporate entities,] but as to substance of the transaction: whether the thing that the Decedent bequeathed can be identified in his estate, because its form may have changed but not its substance."[66]

¶54   Appellants also contend that the Magistrate erred in determining that Decedent's 50% bequest of interest in GCC was not adeemed by the corporate formation of GCE.[67] For the following reasons, the Court affirms the Magistrate's ruling.

¶55   In *In re Estate of Corneiro Tanggaard,* the Court explains the following:

---

[58] Id. at p. 4
[59] Id.
[60] Id.
[61] Id.
[62] Id.
[63] Petition for Review at p. 3.
[64] Memorandum Opinion dated July 27, 2016, at p. 10.
[65] Id.
[66] Id.
[67] Petition for Review at 3.

Ademption of a legacy takes place when the thing which is the subject of the legacy is taken away, so that when the testator dies, the thing given is not to be found to answer the bequest." The last clause is therefore the test of how the thing bequeathed must be "changed", "withdrawn", "taken away" or "extinguished." The adeemed legacy must no longer exist anywhere in the testator's estate.[68]

¶56    However, pursuant to title 15 V.I.C. § 30, a bequest is not deemed revoked if the testator alters but does not wholly divest himself of interest in the asset.[69]

> A conveyance, settlement, deed, or other act of a testator, by which his estate or interest in property, previously devised or bequeathed by him, shall be altered, but not wholly divested, shall not be deemed a revocation of the devise or bequest of such property; but such devise or bequest shall pass to the devisee or legatee, the actual estate or interest of the testator, which would otherwise descend to his heirs, or pass to his next of kin; unless in the instrument by which such alteration is made, the intention is declared, that it shall operate as a revocation of such previous devise or bequest.

15 V.I.C. § 30.

¶57    If an asset is still identifiable in the estate—despite a mere change in its location—ademption does not occur.[70] Courts have routinely ruled that where a corporate reorganization occurs but the successor entity is substantially the same as the original, a bequest of stock in the predecessor company is not adeemed.[71] This principle has been applied in cases where a corporate successor continues the same business operations, retains the same assets, and serves the same function as the original entity.[72]

¶58    In the instant case, Wheatley sought to establish that because GCC was dissolved and a new corporate entity was formed, the 50% stock interest in GCC that was bequeathed to Herminia Soto should no longer be honored and should pass by intestate succession because the bequest had failed under the doctrine of ademption.  However, the Magistrate's ruling is consistent with 15

---

[68] *In re Estate of Corneiro Tanggaard*, 2 V.I. 77, (1946 U.S. Dist.). *See also In re Farber's Will*, 53 N.Y.S.2d 886 (N.Y. Sur. Ct. 1945).
[69] 15 V.I.C. § 30.
[70] Id.
[71] *See In re Estate of Schimentz*, 249 N.Y.S. 2d 641, 643 (N.Y. Sur. Ct. 1964). (holding that where testator specifically bequeathed corporate stock which was later transferred to holding company which had no assets except that stock and which issued all its stock to testator who held it until his death, there was no ademption of specific legacy by reason of transfer of stock to holding corporation).
[72] *See* In re *Estate of Hoyt*, 55 Misc. 2d 240, 242, 284 (N.Y. Sur. Ct. 1967) ("that certain stock transactions often work an exception to the rule. This is particularly true where the facts and circumstances all point to an Inter vivos exchange, surrender, substitution, or swap of securities resulting from mergers or reorganizations of financially intertwined corporate entities")

V.I.C. § 30, which specifically states that a bequest is not revoked if the testator alters but does not wholly divest his interest in the asset.[73]

¶59    The Magistrate properly determined that the 50% interest in GCC was not adeemed for purposes of probate because the company's dissolution was not a true divestment but rather a restructuring that maintained continuity of business operations. In its ruling, the probate court construed the common law doctrine of ademption with the language of 15 V.I.C. § 30, particularly following *Tanggaard,* in two important aspects: 1) the Court analyzed "whether the bequeathed property can be identified or remained in specie in the estate at the time of the testator's death; and 2) the probate court reviewed whether the testator alters the bequeathed property. The Magistrate explained that if the testator's alteration has not wholly divested himself of such bequest, there is no ademption; and states that "if the change is in form which does not wholly change its substance of the bequest or gift, there is no ademption."[74]

¶60    Under the standard of plenary review, this Court finds that the Magistrate's decision and ruling sufficiently provide evidentiary support to determine that "the Decedent did not change GCE in substance from his original corporation of GCC."[75] This Court is authorized only to reverse the decision of the probate court if the findings of fact are clearly erroneous "where they are completely devoid of minimum evidentiary support or bear no rational relationship to the supportive evidentiary data."[76] Here, the Magistrate explained that "while the two names of the two corporations are slightly different, the undisputed facts set forth in detail...show that the Decedent did not change GCE in substance from his original corporation of GCC."[77] The probate court continued,

> Some of the similarities include, but are not limited to, GCE continued the wholesale grocery business operated by GCC, assumed the same assets and liabilities of GCC, purchased inventory and sold business products to the same GCC vendors and customers, respectively, the officers of GCE were the officers of GCC including Soto, and GCE continued to operate at the same business office used by GCC on Veteran's Drive...in St. Thomas, Virgin Islands, and to use the same business telephone and fax number.

¶61    After a thorough review of the record, this Court concludes that the probate court's findings of facts and conclusions of law are sufficient to affirm its ruling. The record reflects that the Decedent was a 100% owner of GCC, a general merchandise store selling wholesale grocery

---

[73] 15 V.I.C. § 30.

[74] Memorandum Opinion dated July 27, 2016, at p. 6.

[75] Id. at p. 10.

[76] *Cascen v. People of the Virgin Islands*, 60 V.I. 392, 417, (V.I. 2014).

[77] Memorandum Opinion dated July 27, 2016, at p. 10.

products and no shares of stock were issued by GCC.[78] Similarly, GCE was a general merchandise store selling wholesale grocery products, and no shares of stock were issued by GCE.[79] Because the testator's interest in GCC remained identifiable in GCE, the Magistrate correctly found that the bequest should still be honored. If the Court had ruled otherwise and declared the bequest adeemed, the testator's explicit instructions in his Will would have been ignored, resulting in an unintended intestate distribution of assets.

> **b. The Magistrate erred in *sua sponte* converting an opposition pleading to a motion for summary judgment without providing notice. However, this Court finds that error to be harmless and affirms the Judgement and Order ruling on the Estate's corporate assets.**

¶62    Appellants contend that the Magistrate erred when interpreting an opposition to Petitioner's Motion to Determine Status of Estate Assets as a motion for summary judgment. The Appellants' further assert that the Magistrate erred in granting the Motion for Summary Judgment, "ruling that the bequest in Gonzalo Calo's Will of 50% interest in Gonzalo Calo and Co., Inc. to Respondent was not adeemed by the subsequent incorporation of a separate and distinct corporation, Gonzalo Calo Enterprises, Inc."[80] Accordingly, the issue before this Court is whether the Magistrate erred in *sua sponte* converting an opposition pleading and ruling on summary judgment to determine the Estate's corporate assets for purposes of ademption.

¶63    As previously mentioned, it is a well-established rule in the Virgin Islands that a court must first provide notice and a chance for the parties to respond before *sua sponte* entering a dispositive order.[81] Here, Soto proposes that because "the affidavits and documents attached to her oppositions have gone unrefuted by Wheatley, the Court should treat this matter as a motion for summary judgment." Subsequently, the Magistrate agreed and *sua sponte* converted Soto's opposition as a motion for summary judgment. It is clear that the Magistrate committed error when *sua sponte* converting Soto's opposition pleading to one of summary judgment without first giving the parties notice and an opportunity to respond.[82]

¶64    The Magistrate stated that "should the court find that the facts are disputed or insufficient to rule, as a matter of law, by way of summary judgment, [Wheatley and Jacob Calo] may seek a hearing at which [they] can have an opportunity to establish those additional facts in support of a ruling in her favor."[83] Similar to the Judgement and Order determining Soto's heirship, error was

---

[78] Id. at p. 3

[79] Id.

[80] Petition for Review at p.3.

[81] See *In re Reynolds*, 60 V.I. 330, 336 (V.I. 2013) (*referencing Brunn v. Dowdye*, 59 V.I. 899, 905 (V.I. 2013)).

[82] See this Court's reasoning and citations in IV (b)(3) of the instant Memorandum Opinion.

[83] Memorandum Opinion dated July 27, 2016, at p. 2.

also committed for failing to put the parties on sufficient notice for a "fair opportunity to dispute that issue."[84] Merely explaining Wheatley and Calo's procedural right to request an additional hearing is insufficient for purposes of providing notice of the *sua sponte* conversion to the appellants.

¶65    Notwithstanding, the "denial of the right to be heard in a civil case is subject to harmless error review."[85] Therefore, the question before this Court remains whether the *sua sponte* conversion amounted to harmless error.

¶66    The Magistrate granted summary judgment in favor of Soto "on the grounds that the Decedent's creation of GCE was not an ademption of his special bequest of his 50% interest in GCC."[86] The probate court continued by saying that "it is entirely unnecessary for the Court not to consider Soto's other grounds [that] 1) GCE is a defacto successor corporation of GCC, and 2) Decedent made an inter vivos gift of either a 45% or 50% interest in GCE when he delivered the corporate books to her."[87]

¶67    This Court finds that the probate court's *sua sponte* conversion of Soto's opposition pleading constitutes harmless error. First, the Magistrate does not rule on facts that were in dispute. On pages 3-5 of the Memorandum Opinion clearly identify "facts not in dispute," which can be addressed as a matter of law. Additionally, had the Magistrate simply denied Wheatley's Motion rather than ruling on summary judgment, the same result would have transpired: finding that the Decedent's bequest of a 50% interest in GCC was not adeemed by the corporate formation of GCE. The Magistrate would have still found in favor of Soto for purposes of adjudicating the terms of the Decedent's Will. Moreover, the Magistrate did not err in finding that the 50% interest in GCC was not adeemed because the company's dissolution was not a true divestment but rather a restructuring that maintained continuity of business operations in accordance with 15 V.I.C. § 30. Should any significant facts or authority come to Wheatley's attention after filing her original Motion, she could have requested leave from the probate court to file additional responses or supplemental replies and requested a hearing.

¶68    For the reasons stated above, this Court finds that the legal error of converting the opposition motion without providing notice to the parties was ultimately harmless and affirms the Magistrate's ruling on summary judgment.

---

[84] See supra footnote 37.

[85] *Brunn,* 59 V.I. at 905.

[86] Memorandum Opinion dated July 27, 2016, at p. 2.

[87] Id.

### 4. Final Adjudication issued by Magistrate on December 3, 2021, is upheld.

¶69    Lastly, the appellant petitions this Court to review the Final Adjudication entered on December 3, 2021.

¶70    Prior to issuing a Final Adjudication in a probate proceeding, the Court must ensure that it has received a final account from the executor or administrator of the estate that contains a detailed statement of the amount of monies received and disbursed during the administration of the estate.[88] Simultaneously with the filing of the final account, the administrator shall make an application to the court for an award of fees and costs, where appropriate, for services performed in the administration of the estate.[89] Not more than five days after the date of the final hearing in the probate proceeding, if there have been no objections to the final account, the executor or administrator shall file a petition for distribution with the Court along with cash or a check made payable to the Government of the Virgin Islands in the amount of the inheritance tax payable upon the estate, if any, and a filing fee for the final adjudication.[90] Distribution of the estate shall be made immediately after entry of the final adjudication and the executor or administrator shall file signed receipts for the distribution of the entire estate with the Court.[91]

¶71    The Magistrate issued an Adjudication after addressing objections to the final account, reviewing an informational motion regarding Decedent's real property conveyed prior to his death, and ordering the payment of attorney's fees and costs. Moreover, the Final Adjudication issued was compliant with the terms of the Will. The Magistrate did not commit reversible error in ordering the distribution of estate assets in probate case ST-2005-PB-00035. Thus, the Adjudication issued by the Magistrate on December 3, 2021, is affirmed.

### V.    CONCLUSION

Accordingly, it is hereby

**ORDERED** that the Judgment and Order entered on May 26, 2009, is **AFFIRMED**; and it is further

**ORDERED** that the Judgment and Order entered on July 27, 2016, is **AFFIRMED**; and it is further

---

[88] V.I. PROB. R. 17.
[89] V.I. PROB. R. 18.
[90] V.I. PROB. R. 19.
[91] V.I. PROB. R. 19.

**ORDERED** that the additional Judgment and Order entered on July 27, 2016, is **AFFIRMED**; and it is further

**ORDERED** that the Order of Final Adjudication entered on December 3, 2021, is **AFFIRMED**; and it is further

**ORDERED** that this matter is **REMANDED** back to the Probate Court for the purpose of finalizing and closing ST-2005-PB-00035; and it is further

**ORDERED** that a copy of this Memorandum Opinion & Order shall be directed to Stylish Willis, Esq., Charles Russel, Esq, and the Magistrate Division of the Superior Court of the Virgin Islands.

**DATED: March __17__, 2025**

_____
**DEBRA S. WATLINGTON**
**Presiding Judge of the Superior Court**
**of the Superior Court**

**ATTEST:**
**TAMARA CHARLES**
**Clerk of the Court**

BY: _____
**Brenda Monsanto**
**Court Clerk Supervisor** __3__ / __17__ / __2025__